Bernard Ryan, P. J.
In 1949 the claimants Kenneth E. Palmer and Hilda C. Palmer acquired title to a tract of land consisting of 5,611 square feet located on the Lake ShoreLackawanna City highway at the northeast comer of its intersection with Hawley Road in the Town of Hamburg, Erie County. The Lake Shore-Lackawanna City highway was known as State Highway 5019 and was maintained by the State of New York. The Palmers owned a gasoline service station located on the corner and in 1955 they entered into a 10-year lease with the claimant Gulf Oil Corporation wherein the rent reserved was $175 per month. Simultaneously with the execution of the lease the Gulf Oil Corporation agreed to make certain improvements to the buildings on the property to the extent of $10,000 and this agreement was carried out and the improvements placed thereunder were attached to the freehold and became the property of the fee owners. The Gulf Oil Corporation in turn subleased the station for one year from 1956 to 1957 at a monthly rental of $250.
*986 The State of New York decided to widen the highway and, pursuant to statute, appropriated in fee a strip not quite rectangular but approximately 25 feet wide along the Lake Shore Road frontage, the parcel appropriated containing 1,555 square feet. At the same time the State of New York took a temporary easement in 3,156 square feet of land for the purpose of removing and razing the buildings and improvements. The work of highway construction was carried out, the buildings were destroyed, the lessee, which had a lease with seven and one-half years to run, was evicted and the Palmers were left with 4,056 square feet of vacant land.
The fee owners, the claimants Palmer, ask us to award them $51,121 and to give the lessee, the claimant Gulf Oil Corporation, nothing. The theory of the attorney for the claimants Palmer is that the contract rent includes not only the $175 monthly rental paid but also the $10,000 in improvements; that this offsets or equals the value of the economic rent; that therefore the claim of the lessee, Gulf Oil Corporation, should be dismissed. We refuse to adopt such proposed findings of fact or the conclusion of law based thereupon.
The Attorney-General, defending the case, asks us to find that the total damage sustained by the fee owners, the claimants Palmer, was $13,440. He requests a finding that the lack of sufficient space for servicing cars at the gas pumps, and the disadvantageous size and shape of the Palmer lot, had an adverse effect upon the economic value of the leasehold interest held by the claimant lessee, Gulf Oil Corporation. That request we do find and adopt. However, we do not conclude therefrom, as requested by the Attorney-General, that because of such adverse effect there was no fair market value for the remaining term of the leasehold interest held by the said claimant lessee.
The low opinion of the value of the Palmer lot held by the real estate experts called as witnesses by the Attorney-General, and urged upon us by the Attorney-General, is based upon the proposition that at the time of the appropriation major oil and gas companies desired and favored lots rectangular in shape, with at least 100 feet road frontage; that the Palmer lot did not meet such standards, being triangular in shape and having only 70 feet road frontage on the main highway. Another adverse factor urged by the defense here is that the concrete islands, each containing two gasoline pumps, were not located on the Palmer property but were within the highway right of way as it existed prior to the appropriation of Parcel N.o. 13 for the purposes, of making the road still wider.
*987 During the course of the trial marked emphasis was placed upon the allegedly scanty dimensions of the lot and upon the legal proposition that the pumps, being located within the right of way, could be removed at any time. The fact was, however, that the service station was doing business at an average rate of 191,136 gallons of gasoline per year and no governmental authority, State or municipal, had directed the removal of the pumps. Moreover, the lessee was operating at an advantage, not only by receiving a monthly rental of $75 in excess of the rental which it was paying the Palmers, but by having an outlet for its products upon which it is fair to assume it was making a profit. In addition it had invested $10,000 in improving the buildings which became attached to the freehold, the use of which it lost when its lease, with seven and one-half years to run, was destroyed by the State’s entry under eminent domain.
On its behalf the claimant lessee called as its expert witness an appraiser who gave it as his opinion that the leasehold had a value on the date of appropriation of $10,500. This he arrived at by adopting as a fair market rental value two cents per gallon on the gallonage sold. On that basis he computed a figure of $3,822 from which he deducted the stated rent of $175 per month, or $2,100, leaving $1,722 as the fair market rent excess over the contract rent. Taking the present day value of an income of $1,722 annually for seven and one-half years discounted at 5% and using an Inwood factor of 6.124 the result of his computation was $10,545, which he “ rounded out ” to $10,500.
After extended review of the testimony in this case, including the exhaustive cross-examination of the fee owners’ principal witness (71 stenographer’s minute pages of cross-examination as against 28 stenographer’s minute pages of direct, this followed by redirect and recross), we have reached the conclusion that the rule to be applied here is that expressed in Esso Standard Oil Co. v. State of New York (10 A D 2d 760 [1960]). Accordingly we find that by virtue of the taking of Map No. 13, Parcel No. 13, 1,555 square feet in fee, claimants Palmer were damaged in the amount of $30,000. Out of that sum must be allotted to the claimant G-ulf Oil Corporation the sum of $7,500, which we find to be the value of the leasehold over and above the rent reserved. In doing so, and referring to the method by which the lessee’s appraiser arrived at his opinion of a valuation, we note in passing that the Inwood factor has theretofore been applied by this court. Also, and within a few days last past it ha's received approval by the Supreme Court, Appellate *988 Division, Third Department. (Mount Hope Cemetery Assn. v. State of New York, 11 A D 2d 303.)
The claimants Palmer are entitled to a further award in the amount of $500 for the temporary easement, the use of which was given up by the State, December 1, 1958. Interest on that sum is awarded from the date of surrender of the easement. Interest on the sum awarded to the Palmers for the fee taking and to the Gulf Oil Corporation for its leasehold interest will be added to the award in accordance with statutory requirements.