Alexander Del Giorno, J.
The above claims were consolidated for the purpose of trial with the stipulation that separate judgments be entered by the court. Except for the fee claim of Jack Brause v. State of New York, the others were all fixture claims by tenants located in the building owned by Brause.
Reuben Gurwitz conducted a stationery and luncheonette store: Martin Jablon conducted a pharmacy; Aber-Dulberg, Inc., conducted a supermarket grocery and Morganthal was its sub-lessee as owner of the butcher department; East Hill Cleaners and Dyers conducted a dry-cleaning store, doing its own dry cleaning. A schedule of the alleged fixtures is attached to their separate claims.
From the testimony, it appears that the State appropriated these premises on August 30, 1956, and that all the tenants remained in the premises for some months thereafter.
The testimony also indicates that some of the alleged fixtures were voluntarily removed in toto and some in part by the tenants after the date of appropriation but before vacating their stores. Some of the fixtures were reinstalled at some cost to the tenants in other stores they had rented at other locations. Some of the alleged fixtures remained in the premises.
*733 At the trial the tenants demanded compensation for the alleged fixtures taken in toto or in part as well as those they left in their respective stores.
In some cases the proof of value of the alleged fixtures was offered by the experts on the basis of the fair and reasonable market value of the fixtures on the date of appropriation. In other cases the proof of value was arrived at by determining the cost of reproduction, less depreciation, as representing the sound value of the fixtures.
Findings of fact and conclusions of law have been submitted in each case. Several questions have arisen in these cases which the court believes may be covered better by this decision, in addition to the findings submitted.
It appears that the issues presented by the testimony were:
First: Whether any or all of the items were fixtures.
Second: Whether proof of reproduction cost of the several items, less depreciation, constituted a proper compensable evaluation of the items found to be fixtures.
Third: Whether the fair market value should have been the proper measure of damage.
The solution is not an easy one. Courts have differed as to what constitutes a fixture as well as to what theory of appraisal should be employed to prove value.
Except for cross-examination of the claimants’ experts, the State offered no testimony of its own; and since by law the State is deemed to deny every allegation of the claim, it can very well be perceived that it is left entirely to the court to determine the issues before it.
At the trial, the fee owner stated that he made no claim for any item of fixture irrespective of any terms in the leases and that these should be awarded to the tenants. The court holds that whatever may have been the terms of any lease provisions concerning the owner’s right to fixtures annexed to the premises, that since the owner released such right, no benefit therefrom may be claimed by the State. The State did not supplant the owner. That right and obligation was a contract, binding only the owner and the' tenant. The State was a stranger which bought all that was in the premises. How the parties wished to divide the total award was their business and theirs alone. Should we assume that there were no leases, the court would still hold that the State would be answerable in damages to the tenant for the fixtures. (Tinnerholm v. State of New York, 15 Misc 2d 311; Matter of Willcox, 165 App. Div. 197; Matter of City of New York [Allen St.], 256 N. Y. 236; Jackson v. State of New York, 213 N. Y. 34.)
*734 We have stated before that all the tenants remained in their respective stores for some months after the appropriation date. The fixtures "they removed were removed after that date.
In Jackson v. State of New York (supra, p. 36), the court said: <‘ If the State has the right, under a general notice of appropriation, to insist that title to the fixtures has passed to it with the land, the owner has the correlative right to insist upon payment. The law does not leave the title in a state of suspense. ’ ’
In the Jackson case, the court also made an observation that it could not pass upon the question of some fixtures which had been removed by the owner after the appropriation, for the reason that since no elements of that controversy were before it, it could not pass upon this issue, but stated (p. 37): “Upon another hearing this element of the controversy may be more fully developed.”
This element is now before us fully developed. To determine the application of the law to it, we may start with the elementary concept that the obligation of the State occurs at the instant of appropriation. (Highway Law, § 347, subd. 5.) It can be said that it is at that moment of filing the appropriation notice in the office of the County Clerk that the respective rights of the claimant and the State are established. From that obligation the State may not escape. In other words, the State must pay for every item the court finds to be a fixture.
But we have said that the tenants removed, after the appropriation, either completely or in part, some of these items alleged at the trial to be fixtures which were in the premises at the time of appropriation. What are we to determine regarding these items? Were these definitely fixtures on the date of appropriation when it is said that the obligation of the State to pay became established, or were they to be defined as compensable fixtures only after the court so finds after trial, upon competent proof submitted to it?
• As a matter of conscience and fair play towards all parties, including the State, the answer, I believe, must be that those items claimed to be fixtures can be found to be such only if they were left behind in the premises by the tenant or voluntarily released to him by the State after the appropriation. When the tenant removed the alleged fixtures, he constituted himself the judge and jury concerning the fixtures removed. He determined for himself the character thereof; he decided that it was removable; that it was a piece of personalty. As such, the items removed were not compensable. By his action, the tenant has usurped the prerogative of the court to his own peril. What is *735 a fixture is a conclusion of law that only the Judge may lawfully determine. That conclusion may he reached by the court only when it has heard the testimony of both sides which would point to the items left behind by the tenant for the benefit of receiving compensation for the value thereof.
I hold likewise where the tenant removed portions of the alleged fixture. He has no right to do so if he claims the article to be a fixture, for in that event it passed to the State with the realty. Having thus destroyed the usability and character of the article, he may not now make claim against the State which he has deprived of the possible use of said article. Justice Hecht, in Matter of City of New York (Lincoln Sq. Slum Clearance Project) (24 Misc 2d 206) at page 212 so lucidly stated this point, when he said: “no damages may be allowed for the diminution of value of fixtures removed by the condemnee”. But even if Justice Hecht had not so decided, this court would still hold that the tenant was not entitled to compensation. We think that this holding may be justified either by determining that the tenant voluntarily destroyed what he claimed to be a fixture by damaging or annuling its usefulness and workability, or that he considered it an article of personalty from which he took what he could use and left behind the useless portions for junk, which, at best, would have only a nominal value.
This holding, I realize, presents some difficulties to the tenant, for he is called upon to determine what he should leave behind and what he must take. That decision presents a risk to him for the court might well decide it was not a compensable fixture. However, one can well consider too, that to him the article, whatever its final definition by the court, was worth more than any possible award he would receive for it, which prompted its removal by the tenant.
Beference was made to the decision regarding fixtures in the case of Gottfried v. State of New York (23 Misc 2d 733). The decision in that case was based on facts not identical with these. There, the State was held responsible in damages for the fixtures which were not found in the buildings some two years after the appropriation. The fixtures had mysteriously disappeared after the appropriation and the court held that the tenant, who denied taking them out, was without blame therefor. The court held the State responsible because it did not prove that the tenant removed the fixtures. Therefore, the court held there, that the State should pay for what fixtures were proved to be in the various buildings on the date of the appropriation.
Having thus concluded our discussion concerning the fixtures which were removed in toto or in part, we now pass upon the items of alleged fixtures which were left intact in the premises.
*736 We are called again to define the meaning of a fixture. The legal meaning of the word ‘ ‘ fixture ’ ’ is construed differently than it is commonly understood by the average layman.- The public generally apply the designation of ‘ ‘ fixture ’ ’ to counters, display cases, refrigerators, lights, etc., which are used and necessary in the conduct of a business. In the law, some of these may be fixtures or they may be personalty. The law applies a test to arrive at its conclusion that the item is a compensable fixture. It requires a positive answer to at least one of the following queries:
(1) Is the article so annexed to the realty that its removal would materially damage either the article or the realty, or both? (Example: Plywood wall covering.)
(2) If the article be removable, was it custom-built for or adaptable to the freehold so that if removed its value thereafter would be only a fraction of its value to the tenant? (Example: Church light fixtures.)
(3) Was the intention of the party making the annexation to make a permanent annexation to the freehold? (Example: Steel stairway to the cellar in place of a former wood stairway.) (Potter v. Cromwell, 40 N. Y. 287.)
At least one such attribute was found applicable to each item this court determined was a compensable fixture. Having determined what are fixtures, we have now to determine what may be the accepted proof of value thereof.
I believe it to be an elementary concept of law that generally fixtures should be evalued on the basis of their fair and reasonable market value. (Matter of City of New York [Allen St.], supra; 1 Orgel, Valuation under Eminent Domain [2d ed.], § 78, p. 334.) The court is of the opinion that this test is clearly applicable to showcases, counters, mirrors, refrigerators, etc., all items which are procurable in the open market. These are usually installed as units or put together in sections made to fit. They bear the imprint of style, and as the style changes, so does their market value.
It is a fact that evaluation of fixtures on the basis of reproduction cost less depreciation results invariably in assigning a higher value to the fixture than it would be worth at its normal market value. The State may not be expected to pay more for such fixtures than a person would.
On the other hand, an exception to this rule is acceptable for those items which were custom-built to fit in the premises or were specially adapted therefor, such as wall shelving, wall paneling, linoleum, cases, etc. These can only be valued on the basis of reproduction cost, less depreciation, for their removal *737 means their destruction; and even if not destroyed, there would, obviously, be no further use thereof nor a market wherein these could be sold. (Antonowsky v. State of New York, 14 Misc 2d 689.)
Evaluation on the basis of reproduction cost less depreciation is also acceptable in the case of a piece of machinery or mechanical equipment which has been so constructed to fit the premises that its removal would amount to its destruction or loss of usefulness for the purpose it was installed. In one of the claims herein, the steam boiler used in the dry-cleaning store was imbedded in cement in the cellar and rose to the floor above through holes cut in the floor. As it was constructed, it was now too large to carry out, even if it were removed, without breaking through the walls of the building. There is no ready market for such piece of equipment even if it were functional after its removal. For these reasons, I hold that proof of its sound value was properly submitted on the -basis of reproduction cost less depreciation. (Jackson v. State of New York, supra; Antonowsky v. State of New York, supra.)
In summarizing this last one of the issues discussed, it may well be stated that, for all practical purposes, the acceptance by the court of proof of the sound value of an article, based upon the theory of reproduction cost less depreciation, involves in its conclusion the determination that the usefulness of such article to the owner, which began upon its installation, ended with the appropriation, except for a nominal value as second-hand material.
This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act. Let judgment be entered accordingly.