RICHARDS-DOWDLE, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 40626.)

Court of Claims, August 18, 1966.

*Hancock, Dorr, Ryan & Shove (Stewart F. Hancock, Jr.,* and *John Varney* of counsel), for claimant. *Louis J. Lefkowitz, Attorney-General (Edward C. Schepp* of counsel), for defendant.

JOHN CARROLL YOUNG, J. The above-entitled and numbered claim which is for an appropriation of claimant's real property under section 30 of the Highway Law was originally reached for trial and tried before this court on the 18th and 22nd days of September, 1964, and an award was made and judgment against the State entered thereon in the office of the Clerk of the Court of Claims on the 9th day of October, 1964; the award to claimant was in the amount of $11,000 which with interest in the amount of $1,243 resulted in a judgment in the amount of $12,243.

The State appealed from said judgment to the Supreme Court Appellate Division, Fourth Department, which reversed and granted a new trial on the ground that it was error to exclude evidence which the State attempted to introduce to show that claimant after the appropriation had removed part of an advertising sign from said property (24 A D 2d 824).

Thereafter, this claim duly came on for retrial and was tried before the undersigned at a regular term of this court.

\* \* \*

This is a claim for the appropriation of claimant's land pursuant to section 30 of the Highway Law, which proceeding is described as Interstate Route 505-3-3.1, Syracuse-Mattydale Section, 7th North Street Interchange, Onondaga County, Map No. 667, Parcel No. 873.

\* \* \*

Before the appropriation, the property consisted of 0.425± acre, consisting of a lot in the form of a parallelogram bounded on the westerly side by the easterly line of the right of way of Interstate Route 81, on the south by lands of one Wagner, and on the north and east by other lands of Mr. and Mrs. Austin F. Avery, the grantors to claimant; claimant's said land was without legal right of access to said Interstate Route 81, since the lands acquired for the construction of said Route 81 had previ-

ously been appropriated from said Averys without right of access from said Route 81 to and from Averys' abutting lands, of which claimant's land was a part; claimant had legal access, however, to its property which was adequate for the property's highest and best use, over a right of way or easement extending easterly over other lands of said Averys to a public highway known as Brookfield Road, but claimant's land did not abut on any public highway to which it had legal access.

Claimant corporation is, and at the date of the appropriation was, engaged in the business of outdoor advertising; there was erected and existing on claimant's said land at the time of the appropriation, an advertising sign or billboard, being a single structure supported by steel beams set in concrete 4 feet beneath the surface of the ground, and 17 feet of upright above the ground; it was constructed of steel channel beams 8 inches wide and weighing about 11½ pounds per foot. On this structure were four standard signs or billboards each illuminated by two 8-foot fluorescent lighting tubes; these were wired to an outlet box and equipped with an electric meter and time switch, and electric wires extended from the primary electrical service to the sign. Claimant obtained the component parts for constructing such signs, such as steel beams, angle iron, lumber, brackets, hardware, fiber glass trim, panel sections and electrical wiring and fixtures from various dealers and producers of such materials and claimant maintained labor crews for constructing and maintaining the signs.

The evidence showed that the fair and reasonable charge for erecting these 4 signs on August 9, 1961 was $1,200 each or a total of $4,800. This sign had been constructed thereon by claimant in 1957 while claimant occupied the land under a lease from the then owner thereof. This structure was erected in such manner and position that the signs faced in two directions along said Interstate Route 81 and constituted a highly desirable location for such advertising signs.

Route 81, a relatively new and controlled access highway extends northerly and southerly, from the City of Syracuse, and at the time of this appropriation in the area where claimant's property was located was already one of the most highly travelled public highways connecting said city to points to the North; claimant's property was just north of 7th North Street near the location of the Hotel Syracuse Country House and other recent developments and in an area which had recently experienced rapid growth and where land values had increased tremendously; it was near the Northern Lights Shopping Center Traffic Circle where traffic exits from Route 81 to the Village of

North Syracuse, and to Hancock Airport; it is about 1,000 feet north of the New York State Thruway Interchange Number 36, which is the busiest of the 5 interchanges servicing the City of Syracuse.

Since claimant's land was located in the Town of Salina, Onondaga County, New York, in an area which had been zoned " Commercial " by said municipality, the provisions of section 86 of the Highway Law therefore did not apply thereto, and its value was thereby increased.

The real property taxes consisting of school taxes and the State and county taxes which claimant paid on the appropriated property, were based on an assessment by the Town of Salina Assessors that listed the value of the land at $900 and the value of the improvement — which was the sign in question — as $1,100, totalling $2,000.

The evidence clearly indicates and the court finds, that claimant intended to keep this sign on the property permanently, and that claimant had no intention of removing the sign had it not been for the appropriation; also, that with good maintenance, a sign such as this has an indefinite life and could have reasonably been expected to remain in this location and to serve its purpose for 25 or 30 years.

In this connection it is significant to note that both the claimant's and the State's appraiser testified that the highest and best use of claimant's property was for the erection and maintenance thereon of billboard signs.

This court, on this second trial — pursuant to the direction of the Appellate Division — received proof of the fact that after the appropriation, claimant removed portions of said sign as bearing on the question of whether claimant had determined that the sign or some part of it was personalty.

After receipt of such evidence this court finds that it was not claimant's intention to consider the sign to be personalty but that it was claimant's intention in erecting the sign to make thereof a permanent accession to claimant's freehold.

Claimant's representative — an officer of claimant corporation — testified that at some time after the appropriation he received a telephone call from a person who identified himself as a representative of the contractor on the highway improvement for which this property was taken, advising that the sign was in the way of the contractor and that claimant should come to the property and remove the sign; that after receiving this call, he directed some of his men to go to the site and remove the sign; that part of the sign was removed early in November, 1961 and the remainder thereof in June, 1962, after claimant had

received a second call to remove it. Claimant's said officer testified that the steel sections are nailed to the stringers, and in removing them it is very probable they will be, if not destroyed, at least mangled to the extent where claimant would not want to re-use them.

Claimant's said officer stated he did not know exactly what portions of the signs were actually brought back by his employees and returned to stock but he did state that the only portions salvageable were the steel uprights and the fluorescent lights.

While evidence was received showing that the cost new of these last-mentioned items was $132.50 for the steel uprights and $200.16 for the lighting units or a total of $332.66, there was no proof of the cost of the labor required to dismantle them and return them to stock or of the fair market value of these items after they were salvaged.

In the absence of such proof, and since it is only reasonable to assume that the cost of such labor would represent a substantial part of, or might even exceed, such after value, the court has made no determination of any amount with which to credit the State in mitigation of damages herein by reason of the recovery of such items by claimant.

Subsequently the State produced as a witness the State Engineer who had been in charge of such construction; he testified that he had called claimant's office and given the order above referred to.

This court, therefore, finds that such notice received by the claimant's office was given by the State, but the court also finds and concludes that such directive did not, nor did any removal pursuant thereto, change in any manner the character of the sign from what it actually was, that is — a part of the claimant's real property.

The testimony of the State's witness, Margolis, was considerably weakened on cross-examination and was not convincing, and the court does not adopt his measure of damage as applied to any specific items recovered by claimant as above mentioned.

The highest and best use of claimant's property before and on the date of the appropriation was for commercial use for a signboard location.

The subject proceeding unqualifiedly appropriated approximately 0.425± acre, constituting all of claimant's property and all of the improvements thereon. The notice of appropriation was general, the sign was not excepted, and no counterclaim was interposed by the State to recover and to offset any salvage value thereof.

It was clearly established as a fact which the State did not dispute, that the structure constituting these signs, was on the property at the time of and for some time after the appropriation.

The claimant's expert testified the total value of claimant's property on the date of the appropriation was $15,700 consisting of $11,100 for the land and $4,600 for the sign. He arrived at the value of the sign by computing a 5% depreciation based on a reconstruction cost of $4,800 and rounded his result to $4,600, which this court finds to be substantially correct. However, the court finds and concludes that this witness did not give sufficient weight to the fact that claimant had purchased the land as recently as May 27, 1960 for the amount of $5,000 and although many factors indicated an appreciation thereafter in land values to the date of this appropriation on August 9, 1961, it was not satisfactorily shown that such values more than doubled during this period as his testimony would indicate.

The State's expert, although he had on the first trial of this claim testified to a land value of $5,000 and the value of the sign as $2,640 for a total damage of $7,640, stated that on this second trial he had been directed by the Attorney-General to state a value of the land separate from the sign thereon and again testified that the value of the land alone was $5,000, and that he had on this second trial no opinion as to the value of the sign on the property as of the date of this appropriation. Even assuming *arguendo* that the entire sign did not constitute a compensable item, it is clear that this witness gave no consideration whatsoever to the existence of the sign on the property or to the enhancement in value of the real property attributable to the steel uprights set in concrete which undeniably constituted part of the said real property.

Also, the court does not accept this witness' opinion that no appreciation whatever occurred in the value of this land from May 27, 1960 to August 9, 1961, but on the contrary finds that in this particular area many factors were combining during said period to make this land more valuable including the enactment of section 86 of the Highway Law adopted by chapter 316 of the Laws of 1961, effective April 1, 1961 (but which did not affect claimant's property) authorizing restrictions on the use of certain lands for advertising sign purposes.

The court does not accept this witness' version and determination of the claimant's damage.

Upon all the evidence herein, after giving to the opinion of each expert the weight to which it is entitled and from the benefit gained by the court's viewing of the property, the court

has reached an independent valuation of claimant's property as of the date of this appropriation. (*Hazard Lewis Farms* v. *State of New York,* 1 A D 2d 923.)

The court finds that the fair and reasonable market value of the subject property on the date of the taking was $11,000; and that the amount by which claimant has been damaged is $11,000 all of which constitutes direct damage. The claimant is entitled to an award therefor together with appropriate interest.

The court has viewed the property; although the structure was removed prior to the actual viewing by the court, the court was generally familiar with the property prior to the appropriation, has had the benefit of photographs and descriptions thereof, and has a clear conception of the property at time of the appropriation.

An appropriation of land unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures. (*Jackson* v. *State of New York,* 213 N. Y. 34; *Matter of City of New York* [*Allen Street*], 256 N. Y. 236, 241.)

The sign on claimant's property was a fixture attached to and forming a part of and which enhanced the value of, the real property on the date of this appropriation.

The sign in this case meets the test of the united application of the three requisites determining it to be a fixture, namely: it was annexed to the real property, its use was well adapted to its location, and it was the intention of claimant that its installation was to be permanent. (*Potter* v. *Cromwell,* 40 N. Y. 287; *McFadden* v. *Allen,* 134 N. Y. 489; 2 Nichols, Eminent Domain [3d ed.], § 5.83, p. 329.)

There is no dispute that the sign was annexed to the land on the date of this appropriation and the evidence showed that the location was ideally adapted to use for sign purposes. (*Ford* v. *Cobb,* 20 N. Y. 344.)

The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and intention of the party attaching it. (*McRea* v. *Central Nat. Bank of Troy,* 66 N. Y. 489; *Gould* v. *Springer,* 206 N. Y. 641.)

The evidence establishes that in erecting said sign it was the intention of claimant to make it a permanent accession to the claimant's freehold.

In determining whether personalty attached to realty was intended to be a permanent accession to realty so as to be a "fixture", the relationship to the realty of the person making the attachment may be decisive, and considerable weight should

be given to the fact that the person making the attachment is the owner of the realty, since an owner is more likely to intend permanency than one only temporarily in possession of premises, such as a tenant. (*Herzog* v. *Marx,* 202 N. Y. 1; *Marine Midland Trust Co. of Binghamton* v. *Ahern* [Sup. Ct.], 16 N. Y. S. 2d 656.)

The evidence does not establish that as of the date of the appropriation claimant had determined or even considered the sign on the appropriated property to be personalty.

The unique location of this sign justifies consideration of the reconstruction-cost-less-depreciation method of determining the value of the sign as it enhanced the value of claimant's property as a whole. (*Matter of City of New York* [*Lincoln Sq. Slum Clearance Project*], 15 A D 2d 153, affd. 12 N Y 2d 1086; see, also, *Gurwitz* v. *State of New York,* 27 Misc 2d 731, affd. 15 A D 2d 712.)

The rights of the parties were fixed on August 9, 1961, when title passed to the State by the filing in the County Clerk's office of an unqualified appropriation map and description. (*Jackson* v. *State of New York,* 213 N. Y. 34, *supra.*)

The land and the sign being both owned by the claimant may be in this case considered as a unit. It has been said that " [I]n New York, concerning an *owner's* fixtures, the Court of Appeals has been in accord with the general approval received by the ' unit rule ' " (Sackman — " Fixtures in Condemnation — Concepts New and Old," 1964 Institute on Eminent Domain, Southwestern Legal Foundation, p. 35).

It has been held that signs and billboards permanently affixed to land or buildings are compensable fixtures.

Claimant's subsequent removal of parts of the sign, whether at the direction of the State or at the direction of the contractor constructing the improvement, does not alter the legal status of the sign as part of the real property as it existed on the date of the appropriation, and claimant is not thereby estopped from contending the sign was a part of the real property. (*Rochester Poster Adv. Co.* v. *State of New York,* 27 Misc 2d 99, 104, affd. 15 A D 2d 632, affd. 11 N Y 2d 1036; *Whitmier & Ferris Co.* v. *State of New York,* 12 A D 2d 165, 168; *City of Buffalo* v. *Michael,* 16 N Y 2d 88, 92.)

In the absence of a counterclaim, there is no basis in the pleadings for any offset against the award herein for any amount in favor of the State in mitigation of damages. If the State claimed to have a valid claim against claimant or a valid offset against the award to be made herein, it could have brought civil action against the claimant or could have interposed a

counterclaim. (*Gottfried* v. *State of New York,* 23 Misc 2d 733, mod. on other grounds 14 A D 2d 612, affd. 11 N Y 2d 1084.)

The claimant is awarded the sum of $11,000 for all damages, with interest thereon from August 9, 1961 to February 9, 1962, and from June 12, 1962 to the date of entry of judgment herein.