Scileppi, J.
Claimants A & P ancñfche State appeal,'‘pursuant to leave granted by this court from an order of the Appellate Division, Third Department, which unanimously affirmed judgments of the Court of Claims awarding the landlord, respondent Garfield Homes, Inc., the sum of $37,532.32 and the tenant, appellant A & P, the sum of $3,602.68 as damages for their respective interests in real property appropriated for highway purposes. This appeal was heard during the December 1967 Term of the court. On December 29, 1967 reargument was ordered (21 N Y 2d 721) and the reargument was heard during the February 1968 Term of the court.
In 1937, Garfield Homes, Inc. erected a one-story brick building on its premises at the northwest corner of Willis Avenue and Jericho Turnpike in Floral Park in accordance with plans and specifications furnished by A & P. A & P has been in possession ever since under leases for various terms. The premises occupied by A & P were 50 feet wide and 125 feet deep. To the rear was an unimproved lot 25 feet by 100 feet, which was not used by the tenant.
When A & P quit possession of the building in June of 1960, it had a lease running until April 30, 1964 at an annual rental of $6,500 with an option to renew for five more years at an annual rental of $7,099. It was conceded by all witnesses, including those of the State, that the lease was a bargain and that the fair and reasonable annual rental value of the building was actually $9,000. The lease provided that the landlord was to make all exterior and structural repairs. No condemnation clause was included in the lease.
The supermarket operated on the premises was profitable, and A & P would have exercised its option to renew the lease. The gross volume was over one million dollars a year and the annual net income fluctuated from $18,000 to $38,000.
The store, which had large show windows running completely across the building, fronted on Jericho Turnpike, the main thoroughfare in Floral Park. The only entrances and exits to the store were on this main street with the exception of two *82 doors at the rear of the premises which were used for the unloading of trucks.
On October 30, 1959 the State appropriated in fee the entire frontage of the premises along Jericho Turnpike to a depth of about 18% feet and acquired a temporary easement to a depth of an additional 10 feet to enable it to demolish the portion of the building taken in fee. The area of the building prior to the appropriation was 6,250. square feet. The taking in fee and the temporary easement reduced the area to 4,825 square feet, or about 25% less. When the State relinquished its temporary easement, 5,325 square feet remained.
Although the appropriation of the premises occurred on October 30, 1959, A fe P remained in complete possession of the premises until June 30, 1960 and continued to pay rent to Garfield, the landlord, to that date.
On June 30, 1960 A & P vacated the entire premises and ceased paying' rent. Upon vacating the store, A & P removed most of the fixtures therefrom and disposed of them. The State then began to tear down the portion of the building which was appropriated in fee. The demolition was completed no later than April 30, 1961.
Section 30 (subd. 20) of the Highway Law requires the State to file a certificate terminating the easement Avhen the Superintendent of Public Works determines that the easement is no longer required. Although the State now contends that the temporary easement was not needed or used after the demolition was eompletéd, a terminating certificate was not filed until August 13, 1963. The landlord made no attempt to repair the premises or use the easement area during the period between the completion of the demolition and the filing of the termination certificate.
After the State completed demolishing the portion of the building taken in fee, it erected a wooden wall in front of the unappropriated remainder. This left the premises without any show windows and without any entrances and exits except for the small doors at the rear of the building. The sidewalk and highway in front of the property were torn up and available for use only by the construction workers. The interior of the store was substantially reduced in size and, even if the operation of a supermarket were possible, with the existing conditions *83 of the exterior, it would have been necessary for A & P to rearrange stock, shelving, checkout counters, freezers, plumbing, wiring and other equipment and items.
The Court of Claims held that the State’s taking deprived A & P of the use of 25% of the leased premises and, therefore, awarded it $3,602.68 which represented 25% of the value of the lease. The court denied A & P compensation for its fixtures on the theory that A & P’s removal and destruction of the fixtures without the State’s consent exonerated the State from liability therefor. Garfield Homes, Inc. was awarded the sum of $27,297.32 for the fee taking. This award included compensation for (a) damages to Garfield’s fee ($17,297.32) and (b) cost of curing its building front ($10,000). In addition, Garfield was awarded $10,235 for the “ rental value ” of the temporary easement.
The Appellate Division unanimously affirmed.
A & P contends that the award for the damage to its leasehold is grossly inadequate; that the taking terminated its lease with Garfield and relieved it of its obligation under the lease to continue paying rent; that, if its lease was not terminated, it—not Garfield — is entitled to the award for the temporary easement. A & P also argues that it is entitled to compensation for the damage to its fixtures.
The State contends that the award of $10,235 for the ‘ ‘ rental value ” of the temporary easement was excessive and improperly computed.
TERMINATION OF THE TENANCY
The court below noted that under the law of New York a partial taking does not terminate a tenancy. It held, however, that this question would be more properly determined in a suit between A & P and Garfield. Garfield presently has two actions pending in another court against A & P for rent. Since the results of those suits will have a direct bearing upon the amount of damages to which the claimants are entitled, many, if not all, of the issues in those suits should be litigated in the Court of Claims in this condemnation proceeding. Consequently, it becomes necessary for us to discuss the effect of a partial taking on the tenant’s obligation to pay rent. The law of New York is in accord with the law of a majority of *84 jurisdictions that a partial taking does not terminate a tenancy and relieve the lessee of the obligation to pay rent for the . portion of the premises which remain (Duhain v. Mermod, Jaccard & King Jewelry Co., 211 N. Y. 364; 4 Nichols, Law of Eminent Domain [Sackman, 3d ed.], § 12.42 [1]). A lessee, however, is entitled to an abatement of the rent for the portion of the premises appropriated by the State provided he pleads and demands an abatement in an action against him by the landlord for the entire rent reserved (Duhain v. Mermod, Jaccard & King Jewelry Co., supra; see, also, Fifth Ave. Bldg. Co. v. Kernochan, 221 N. Y. 370). Thus, A & P continues to be liable to Garfield for rent attributable to the portion of the premises not appropriated in fee by the State.
A & P’S CLAIM FOB DAMAGES TO ITS LEASEHOLD
Generally speaking, where there are two or more interests or estates in a condemned parcel, the proper mode of assessing damages is to ascertain first the damage to the fee as if it were unencumbered, and then to apportion that amount among all of the estates and interest which are held in the property (Matter of City of New York, [Mott Haven Houses], 33 Misc 2d 808, affd. 16 A D 2d 637, affd. 13 N Y 2d 959; Matter of City of New York [Allen St.], 256 N. Y. 236, 242-243). A lease is an interest in property which is compensable if the property which is subject to a lease is condemned (Matter of Trustees of New York & Brooklyn Bridge [Clark], 137 N. Y. 95, 97; Folts v. Huntley, 7 Wend. 210, 216; Matter of Daly, 29 App. Div. 286, 289-290; Pomeroy v. State of New York, 18 Misc 2d 377, 380). The damages to which a lessee is entitled are generally the value of the leasehold (Matter of City of New York [Delancey St.], 120 App. Div. 700, 708). In computing the value of the leasehold, the court must first ascertain the fair rental value of the premises and then deduct therefrom the actual rent reserved for the remaining period or term of the lease. Of course, the lessee’s right to renew will affect the value of the leasehold and this must also be considered in determining its value (Matter of City of New York [Delancey St.], supra; Palmer v. State of New York, 23 Misc 2d 985, 987; 4 Nichols, Law of Eminent Domain [Sackman, 3d ed.], § 12.42 [3]).
*85 In the case at bar, the State appropriated in fee 925 square feet of the building leased by A &• P. The Court of Claims concluded that the total damages to the fee as a result of that taking amounted to $30,900. It then proceeded to compute the value of A "& P’s interest in the fee. The court determined that the fair rental value of the premises before the taking was $9,000 per year. The actual rent reserved under the lease running until April 30, 1964 was $6,500 per year. The rental reserved under the option for another five-year term was $7,099 per year. The court found that A & P would have exercised the option had it not been for the condemnation. It then proceeded to multiply the difference between the fair rental value of the premises and the actual rents reserved under the lease and option by the appropriate “ Inwood ” coefficient, and determined that the value of A & P’s lease was $14,410.70.
The court then determined that the total damages suffered by A & P as a result of both the fee taking and the easement taking was $3,602.68, and it directed the State to pay this sum to A & P out of the fee-taking award of $30,900. In our opinion, this direction was erroneous because the $30,900 award reflects only the damages inflicted upon the undivided fee by the fee taking. It does not include an award for damages inflicted upon the fee by the easement taking. The easement taking inflicted damages which are separate and apart from the -factors involved in the undivided fee rule which was discussed above. Consequently, the Court of Claims should not have carved out of the fee-taking award the damages suffered by A & P as a result of the easement taking. The court should have segregated the items of damage suffered by A & P and directed that only those damages which were attributable to the fee taking be paid out of the fee-taking award. It then should have made a separate award to A & P for the damages caused by the easement taking.
The court also erred in computing the damages suffered by A & P as a result of the condemnation. It reasoned that, since only 25% of the area of the land and building was appropriated (15% by the fee taking plus 10% by the easement taking), the value of the lessee’s interest in the property was reduced by only 25%. The record, however, fails to estab *86 lish any direct correlation between the percentage of the area condemned and the damages suffered as a result of that condemnation. For example, the value of the fee prior to the condemnation was $68,600. After only 15% of the premises had been taken in fee, the after value of the fee was $37,700 which represents a decline in value of approximately 45%. Even more relevant is the evidence concerning the decline in the rental value of the premises. Before the fee taking, the fair rental value of the premises was $9,000 per year. The court did not make any specific finding of fact concerning the rental value of the premises after the fee taking. The record indicates, however, that, if the store front had been restored, the fair rental value of the premises after the fee taking would have been $6,000 per year, which represents a decline in rental value of 33%. The court below, of course, was not bound to accept this evidence concerning the fair rental value of the remainder of the - premises (Matter of City of New York [A. & W. Realty Corp.], 1 N Y 2d 428), and we do not mean to imply that the rental value of the premises was, in fact, reduced to $6,000. We, are merely saying that the record before us fails to establish any direct correlation between the percentage of the area taken in fee and the damages suffered as a result of that taking.
In determining the damages to A & P’s lease interest as a result of the fee talcing[1], the court should have computed the bonus value of A & P’s lease and option prior to the fee taking, and then subtracted therefrom the bonus value of the lease and option after the fee taking. The difference between the before and after bonus values represents the quantum of damages inflicted upon A & P’s interest by the fee taking. Having determined the amount of damages, the court should have directed the State to pay A & P that sum out of the total fee-taking award of $30,900.
The bonus value of A & P’s lease and option after the fee taking should be computed by subtracting the actual rent reserved under the lease and option, taking into consideration *87 an appropriate abatement in rent for that portion of the premises taken in fee, from the fair rental value of the remainder of the fee if the premises had been restored. In other words, the difference between the fair rental value of the remainder of the premises and the actual rent reserved equals the bonus value of the lease and option after the fee taking.
THE EASEMENT AWABD
The Court of Claims awarded Garfield $225 per month for the rental value of the temporary easement from October 30, 1959, the date of appropriation, to August 13, 1963, the date of the filing of the termination certificate. The State cogently argues that the Court of Claims erred in making an award for the nine-month period between the date of appropriation, October 30, 1959, and. the date of actual entry by the State onto the premises, July 1,1960, since neither of the claimants suffered any damages during that period.
The claimants, of course, are entitled to compensation for any loss suffered as a result of the temporary easement (Mead v. State of New York, 24 A D 2d 1043; Morton v. State of New York, 8 A D 2d 49, 53; Spencer v. State of New York, 206 App. Div. 376, 377). There should be no recovery, however, where there is no loss (Pomeroy v. State of New York, 18 Misc 2d 377; 19 N. Y. Jur., Eminent Domain, § 216). In the case at bar, it is undisputed that A & P remained in complete possession of the premises and carried on business as usual. It is equally undisputed that Garfield continued to receive from A & P the full rental to which it was entitled under the terms of the lease. We, therefore, fail to see how the claimants were injured during the period in question and, consequently, the award for this period should be vacated.
The State contends, with equal vigor, that it was erroneous for the court below to allow any damages for the taking of the temporary easement for the period between the completion of the demolition on April 24, 1961 and the filing of the termination certificate on August 13, 1963. It points out that the easement stated that it was taken for the purpose of demolishing that portion of the premises taken in fee and that the claimant had the right to use the easement area for any noninter *88 fering purpose subject to tbe approval of tbe Superintendent of Public Works. The State alleges that it did pet use the easement area after tbe demolition was completed and that this was readily observable to tbe claimants. Therefore, says the State, the claimants should have requested permission from the Superintendent of Public Works to use the area and they should have proceeded to restore the premises to a condition of usefulness.
In our view, the State’s contention is untenable.
Section 30 (subd. 20) of the Highway Taw requires the Superintendent of Public Works to file a certificate of termination when the State no longer has need of the temporary easement. The State cannot escape the consequences for failing to comply with the statute by.requiring the claimants t° determine when the State no longer had need for an easement. The State is in a better position than the claimants to make this determination. Moreover, the claimants would be proceeding at some peril if they restored the premises prior to the filing of a certificate of termination since the Stqte had the right to re-enter and use the easement area at any time prior to the filing. Since the claimants were effectively deprived of tbe use of the easement area during the period between the completion of the demolition and the filing of the certificate, an award for damages during that period was properly made (see Morton v. State of New York, supra, p. 52).
Before discussing the State’s contention that the easement award was improperly computed, we must first determine who is entitled to that award. Roth A & P and GarReld lay claim to it. As we have already indicated, the Court of Claims awarded damages for the temporary easement to Garfield. It is our opinion that A & P should have received the temporary easement award.
The easement taken by the State was a temporary one, and the entire period during which it was in effect was shorter than the balance of the leased term. Since the condemnation did not terminate A & P’s tenancy, the only thing that the easement interfered with was A & P’s use and enjoyment of the premises. There is absolutely no evidence in t-Re record that the temporary easement interfered with, or damaged in any way, Garfield’s reversionary interest in the fee. Con *89 seqtiehtly, A & E*—not Garfield—is entitled to the award for the temporary easement.[2]
"the proper measure of damages for the taking of a temporary easement is the decrease in the rental value of the premises subject to the easement during the term of the temporary easement (sometimes referred td as the “ rental value ” of the easement) plus consequential damages, if there be any [Mead v. State of New York, supra; Spencer v. State of New York, supra). Phe State Contends that the Cotirt of Claims improperly computed the “ rental value ” of the easement. "We agfee with this contention.
Phe coúft awarded Garfield $225 per month for a period of 45]z<2 months for the “rental value” of the temporary easement. We have already stated that A & P—not Garfield— should receive the award, and no award should have been made for the period between October 30, 1959 and June 30, 1960, since A & P suffered no damages during that period.
Phe court below adopted the computations testified to by the State’s expert witness in determining a monthly rental for the easement of $225. Phe witness’ method of computation was to deduct $9,000 “cost of cure” for restoring the front of the premises td good condition from his $36,050 estimate of the remainder value of the property, leaving a balance of $27,050. Since the area subject to the easement was approximately 10% of the total afea of the premises remaining after the appropriation in fee, he determined that its annual rental value was 10% of the remainder value of the property or approximately $2,700.
Phere is ho basis, howeVef, either in reason or logic, for *90 assuming that the rental value of the temporary easement is equal to 10% of the value of the balance of the premises.
It is clear from the record before us that the rental value of the premises was substantially affected by the demolition and unrestored condition of the store front. Garfield, however, could not restore the store front until the State filed a certificate terminating the easement. Since the existence of the temporary easement prevented the restoration of the store front, the court should have determined the damages inflicted by the temporary easement by computing the rental value of the balance of the premises if they had been restored immediately after the fee taking, and then deducted therefrom the monthly rental value of the unrestored premises during the period of the temporary easement. This would properly reflect the damages inflicted upon the premises by the easement taking.
CLAIM FOR FIXTURES
When A & P vacated the premises, it removed most of the fixtures from the entire store and disposed of them. A & P now claims that it is entitled to be compensated for those fixtures, since they were rendered valueless by the condemnation. The State argues that A & P’s removal and destruction of the fixtures from either the appropriated premises or the unappropriated remainder, without the request or consent of the State, exonerates the State from liability. The court below adopted the State’s position and disallowed A & P’s claim for fixtures.
This determination was correct. The rule in New York is that a claimant who removes items from a condemned parcel without the State’s consent or request indicates an election on his part to treat the items as personalty. He is, therefore, estopped from asserting the claim that they are fixtures and receiving compensation for them (Gurwitz v. State of New York, 27 Misc 2d 731, affd. 15 A D 2d 712, affd. sub nom. Marraro v. State of New York, 12 N Y 2d 286; Matter of City of New York [Triborough Bridge], 159 Misc. 617, affd. 257 App. Div. 940, mot. for lv. to app. den. 282 N. Y. 808).
Admittedly, the rule is a harsh one, but its necessity is amply demonstrated by the facts of this case. A & P unilaterally determined that its store fixtures were valueless after a portion of the premises had been condemned. It then proceeded, with *91 out the State’s request or consent, to remove the fixtures from the store, destroying them in the process. A & P now asks the State to pay for them despite the fact that the State had no voice in their removal or destruction and no opportunity to salvage anything in mitigation of damages.
A & P contends, however, that our holding in City of Buffalo v. Michael (16 N Y 2d 88) changed the rule of the Gurwitz and Triborough Bridge cases. A & P’s reliance upon the Michael case is misplaced. In Michael, the claimant owned an advertising sign which was on the roof of a building condemned by the City of Buffalo. The sign was placed on the roof pursuant to a yearly lease and the claimant had the right to remove the sign at the expiration thereof. The claimant’s lease expired on April 1, 1960. Prior to that time, the landlord notified the tenant that the lease would not be renewed because of the city’s condemnation, and he requested the tenant to remove the sign. The city took- title to the property on April 19, 1960, and on April 26 it went into possession. The tenant removed the sign on July 15, 1960. The city refused to compensate the tenant for the value of its sign on the ground that the tenant had the right to remove the sign at the expiration of the lease and on the ground that the tenant’s lease had expired prior to the appropriation. This court held that the tenant was entitled to compensation for the value of its sign. We stated that it was not significant that the tenant’s lease had expired prior to the appropriation and that he had the right to remove the sign. We held, however, that it was significant that the city had commenced condemnation proceedings prior to the expiration of the lease and that, if the city had not done so, the lessee would have renewed the lease and would have continued to maintain the sign on the premises. Therefore, since the city forced the premature removal of the sign, the claimant was entitled to be compensated for its value. We did not hold that the tenant was entitled to compensation had he removed or destroyed the sign without being requested to do so.
A & P left a few items in the store when it vacated the premises, consisting of asphalt tiling, window guards, reflectors and wiring. It is reasonable to assume, in light of A & P’s removal of all other fixtures, that these items were not removable with *92 out substantially damaging the freehold, and thus they cannot be the subject of a separate award for fixtures (Marraro v. State of New York, supra, p. 292).
To conclude, the order appealed from should be modified by reversing (1) that part of the order which awarded A & P the sum of $3,602.68; (2) that part of the order which awarded Garfield the sum of $10,235 for the rental value of the easement. The matter should be remanded to the Court of Claims for further proceedings not inconsistent with, the opinion herein. As so modified, the order appealed from should be affirmed.

. Since as we have already indicated the fee-taking damages must be segregated from the easement-taking damages, the computation of damages for the easement will be dealt with later.

. If, of cotirse, the actual rent reserved for the premises subject to the basement is abated, either contractually or by operation of law, and the actual reht reserved is eqtial to or greater than the fair rental value of the premises Subject to the easement, then the landlord would be the only one injured by the easbrhetit taking, and he should receive the whole of the award for that taking. If, however, the actual rent reserved for the premises subject to the basement is abated and the actual rent reserved is less than the fair rental value of the prbiniseS subject to the easement, then both the lessor and lessee Would be injured by the easement taking, and the award for that taking should be apportioned between them. The landlord should receive a share of the award equal to the actual rent reserved which has been abated. The remaining Dortion of the eáseident award represents the decline in the bonus value of the ease, ahd this should go to the lessee (see Nichols, Law of Eminent Domain "Sackman, 3d ed.], § 12.5; Phelps v. United States, 274 U. S. 341).