■ VILLAGE OF HIGHLAND FALLS, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 55085.)—Appeal from a judgment in favor of claimant, entered October 6, 1975, upon a decision of the Court of Claims. Claimant, Village of Highland Falls, operated a water treatment facility on 12.6 acres of land within the village. The property was improved with a masonry building in which the water was filtered and chlorinated, two impounding reservoirs, a 500,000-gallon storage tank, piping and other specialty equipment. In March, 1970 the State appropriated 2.735 acres of the subject parcel in fee. In addition, the State acquired 5.622 acres for a permanent drainage easement and 1.724 acres for a temporary easement. The improvements heretofore described were situated on that portion of the property subject to the temporary easement. The purpose of the temporary easement was for reconstruction of an access road, parking area and appurtenances, and to engage in the construction of walls, excavation "rip-rapping", clearing, stream channelling and the relocation of water lines. The appraisers for each of the parties agreed that the highest and best use for the land was as a water treatment facility and the Court of Claims so found. It was also agreed that there was no severance damage. After trial, the Court of Claims rendered a decision in which it found the fair market value of the unencumbered land both before and after the appropriation to be $11,000 per acre. It further found the after value of the land subject to the permanent easement to be $5,500 per acre predicated upon a reduction in value of 50% and rendered an award in the amount of $61,000 direct damage for the fee taking and the permanent easement. The court further found, by including the value of improvements in the value of the land subject to the temporary easement, that the value of said temporary easement was $29,900 per annum whereupon the amount of $85,130 was awarded for the temporary easement which had a duration of 2 years, 10 months and 5 days. On this appeal, the State contends that the court erred in adopting the valuation advanced by the claimant's appraiser because of the addition of an "utility adjustment" and because his comparable sales were inappropriate, and further contends that the court erred in including the value of the water treatment facility in calculating the rental fee for the area covered by the temporary easement. The State's contention that claimant's comparables were inappropriate and therefore cannot be employed in establishing a range of values for the before and after value of the property is rejected. Upon review of the record we find no evidence that claimant's appraiser's comparables were so dissimilar as to require their exclusion even though substantial adjustments may have been required (see *Chalmers & Sons v State of New York,* 35 AD2d 864; *Sapia v State of New*

*York,* 33 AD2d 821). This finding is particularly appropriate in a case such as this in view of the unique nature and use of the subject property. The State's challenge to claimant's appraiser's use of an "utility adjustment" which was "applie[d] to some degree" by the trial court presents a more difficult question. Claimant's appraiser, in addition to making "normal" adjustments to his comparable sales for such features as location, topography, size and time, adjusted each comparable upward by $7,000 per acre attributable primarily to the superior utility of the property for "its existing use versus the zoned potential uses" yielding an indicated price per acre for the subject parcel of from $16,200 to $17,500. Claimant's appraiser therefore concluded that the market value of the subject property before appropriation was $17,000 per acre. The State contends in essence that claimant's appraiser has in effect done nothing more than added to each of his comparable sales a substantial value over and above all other adjustments simply because the subject property has a highest and best use. We do not agree. The record amply demonstrates that not only is the property in question devoted to a rather unique use, but more particularly it possesses particular elevation and geographical juxtaposition within the existing gravity flow water system of the Village of Highland Falls so as to make the property particularly suitable for use as a water treatment and distribution plant functioning on the basis of gravity flow. There is testimony in support of the premise that no other tract of property of sufficient size, location and topography existed in the village or its environs suitable to this special purpose other than property of the United States Government. In these factual circumstances, considering that none of the comparable sales could possibly have been valued for the highest and best use to which the subject property was devoted, we hold that the employment of an additional adjustment was appropriate. Moreover, it would appear in any event that in the absence of such an adjustment, claimant's appraiser would have posited a before value of at least $10,000 per acre. The actual before value as found by the court of $11,000 per acre therefore suggests that there is a sufficient explanation of the court's finding of before value to sustain it even if it is held that the utility adjustment was not fully supported by the record. Since the finding of before value established the basis upon which the damages for the direct taking and the permanent easement were determined, and the finding that the value of the property subject to the permanent easement was reduced by 50% is not challenged on this appeal, the award of direct damages in the amount of $61,000 is affirmed. In determining the rental value of the temporary easement, the court presumably took the sum of $19,000 (rounded) representing 1.724 acres at $11,000 per acre, and added to it the value of the improvements, *to wit,* $280,000, and then took 10% as the annual rental value. The 10% figure was agreed upon by both appraisers and the $280,000 valuation for the improvements is not challenged. It is urged, however, that the value of the improvements should not have been added to the figure upon which the rental value is based, since the State in utilization of the temporary easement, exercised no dominion over the improvements and "business as usual" was conducted during the tenure of the easement. With a very modest exception to be hereinafter explained, we agree with the State. Claimant remained in complete control of the water treatment plant and other facilities and experienced no interruption in service to customers for the duration of the temporary easement. Thus, the fact that the improvements were physically situated upon the parcel subjected to the temporary easement should not in and of itself entitle claimant to damages based on the value of such improvement. This conclusion is

warranted by the decision in *Great Atlantic & Pacific Tea Co. v State of New York* (22 NY2d 75), in which a determination of the rental value of a temporary easement was at issue. There, the State did not actually enter upon the property until some time after the formal appropriation, and the claimant there was held not entitled to any damages during the period prior to the State's entry. Said the court: "There should be no recovery * * * where there is no loss" (p 87). We think the situation in the present case is analogous. At no time did the State purport to exercise dominion over the facilities and except as hereinafter noted, no interference with claimant's operations occurred. Cases such as *Kravec v State of New York* (40 NY2d 1060), *Wayside Nurseries v State of New York* (34 NY2d 876, affg 36 AD2d 212), and *Wolfe v State of New York* (22 NY2d 292) relied upon by claimant are distinguishable in that they involved permanent easements which by their very nature constitute a substantially greater dominion than does a temporary easement. We, therefore, conclude that, with exceptions to be hereinafter noted, the calculation of the rental value of the easement should not have included the $280,000 value of the improvements. The exceptions to which we have previously referred involve three occasions on which actual alterations of claimant's operations were required as a direct consequence of the State's utilization of the temporary easement. These occasions were an electrical shutdown on June 30, 1971, a pipe break requiring a changeover in filter operations on December 9, 1970 (repaired on the same day) and a tie-up of certain 12-inch lines on December 21, 1971. For these three days we are of the view that sufficient *de facto* dominion over claimant's facilities was exercised so as to entitle claimant to an award based upon the full value of the property. The trial court found the daily rental based on full value to be $82 per day. We find this to be mathematically correct. For the remainder of the easement's duration, the annual rental value is equal to 10% of $19,000 or $1,900. The award for the temporary easement should therefore be $5,394 (rounded), representing $1,900 per annum over a period of 2 years, 10 months and 2 days, plus $246, representing three days at $82, for a total award of $5,640, plus appropriate interest. Judgment modified, on the law and the facts, so as to reduce the award for the temporary easement to $5,640 together with appropriate interest, and, as so modified, affirmed, without costs. Greenblott, J. P., Sweeney, Main, Larkin and Herlihy, JJ., concur.