**In re H & S MANUFACTURING INC., f/d/b/a Viewlex Audio-Visual, Inc., Debtor.**

**Bankruptcy No. 880–01922–18.**

United States Bankruptcy Court, E. D. New York.

Aug. 17, 1981.

Jules V. Speciner, Great Neck, N. Y., for debtor.

Reisman & Reisman, Garden City, N. Y., for landlord.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

First Holbrook Company (hereinafter "landlord") leased to H&S Manufacturing Company (hereinafter "debtor"), certain premises situated at Broadway Avenue and Veterans Memorial Highway in Holbrook, New York (hereinafter "leased premises"), under a written lease dated December 1, 1974.

On May 26, 1981, the Court heard argument on an order to show cause brought by the landlord against the debtor, seeking the following relief:

(1) That the Chapter 11 case be converted to a case under Chapter 7.

(2) That the debtor be ordered to pay forthwith the sum of $10,639.38 to landlord, said sum representing $10,296.17 for the April, 1981 use and occupation of the leased premises, and $343.21, a *per diem* charge for use and occupation for May 1, 1981.

(3) That the debtor be ordered to re-install at the leased premises and at its own expense: (a) approximately 200 feet of buss duct; (b) 3 catalog X–100 4PB plug-in units; (c) approximately ninety drop units; (d) approximately 150 feet of 2/0 cable member plus three inch rigid conduits; (e) water fountains; and (f) all other property of landlord removed from the leased premises by the debtor.

(4) That the debtor be held in contempt of this Court for violating a temporary restraining order dated April 24, 1981, which barred removal of the aforesaid fixtures.

(5) That the debtor be ordered to remove all debris, refuse, garbage, and property it abandoned at the leased premises when it vacated them, or in the alternative, that the debtor be ordered to pay the cost of such a clean-up.

The hearing concluded on June 4, 1981. The facts adduced at the hearings on May 26 and June 4 follow.

(1) The debtor, formerly Viewlex Audio-Visual, filed a Chapter 11 petition in bankruptcy on April 18, 1980.

(2) In the year and three months that have passed since the filing of the debtor's petition, no reorganization plan has been effectuated or proposed by the debtor.

(3) The landlord is the holder of the single largest unsecured claim against the debtor.

(4) Reasonable use and occupation for the premises in question was fixed at the sum of $10,296.17 per month by order of this Court dated March 15, 1981.

(5) The debtor failed to pay for use and occupation of the leased premises for April, 1981, and May 1, 1981.

(6) On May 1, 1981, the debtor tendered the keys to the leased premises to the landlord, vacated the building and disaffirmed the lease.

(7) The debtor left the leased premises in a state of disrepair and left refuse, garbage, and debris in the building.

(8) In early April, 1981, the debtor removed from the leased premises electrical fixtures, *viz.*, approximately 200 feet of buss duct, 3 catalog X–100 4PB plug-in units, approximately ninety drop units, approximately 150 feet of 2/0 cable member plus three inch rigid conduits, and four water fountains. Said fixtures were removed to the premises now occupied by the debtor, where some were installed around April 15, and are now in use, while others are in storage at said location. One of the water fountains was later returned to the landlord.

(9) The electrical fixtures removed were part of a network of electrical lines that formed a gridlike pattern just below the ceiling in the leased premises. The purpose of this network was to provide sufficient electrical power to the entire floor space to run machinery of the type that the debtor used in its manufacture of audio-visual equipment. This network was first installed by the landlord when the leased premises were built, in 1960, at a cost of $300,000.

(10) On April 24, 1981, the Court issued a temporary restraining order, forbidding the debtor from "removing, moving, dissamblying (sic), disconnecting, asportating, carrying away, or attempting the same, any and all electrical wires, cables, conduits . . . ."

(11) The parties have stipulated that the debtor was apprised of the existence of this order on April 27, 1981.

(12) At the hearing held on June 4, 1981, the Court appointed a trustee pursuant to 11 U.S.C. § 1104. Thus, the first branch of the landlord's motion, which seeks conversion of this Chapter 11 proceeding to a Chapter 7 liquidation proceeding, is reserved *sine die*, pending the trustee's report.

Each remaining branch of the order to show cause will be dealt with in turn.

### I

The second branch of the landlord's motion seeks the sum of $10,639.38 for the reasonable use and occupation of the leased premises; to wit, $10,296.17 for the month of April, and $343.21 a *per diem* charge for May 1, 1981.

■ Pursuant to § 365(a) of the Bankruptcy Code, a trustee, or as in this case, a debtor in possession, is permitted a reasonable period of time in which to affirm or reject a lease. *United States Trust Company v. Wabash Rwy.*, 150 U.S. 287, 14 S.Ct. 86, 37 L.Ed. 1085 (1893); 3 Collier on Bankruptcy (15th Ed.) ¶ 365.03[2] at 365–24, 365–26. However, during the interim period, the debtor's liability for the reasonable use and occupation of the leased premises accrues. *Quincy M&PR Co. v. Humphreys*, 145 U.S. 82, 100–01, 12 S.Ct. 787, 793, 36 L.Ed. 632 (1892); *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir. 1939); *In the Matter of Bohack*, 1 BCD 287 (E.D.N.Y.1974).

■ To succeed on his claim, the landlord must satisfy three elements:

(1) A landlord-tenant relationship between the parties. 3 Collier on Bankruptcy (15th Ed.) ¶ 365.03[2] at 365–26.

(2) Use and occupation of the premises in question. *Quincy M&PR Co., supra; Palmer, supra; see* 3 Collier on Bankruptcy (15th Ed.) ¶ 365.03[2] at 365–24, 365–25.

(3) Nonpayment of the fee or rental by the tenant. *Quincy M&PR Co., supra; Palmer, supra; see* 3 Collier on Bankruptcy (15th Ed.) ¶ 365.03[2] at 365–24.

The prior decision of this Court dated March 15, 1981, setting the reasonable use and occupation of the leased premises at $10,296.17 per month, satisfies the first two elements. Relative to the third element, Mr. Charlston, the debtor's president, testified that the debtor had not paid any rent to the landlord for the period in question. Mr. Peirez, a general partner of landlord, testified that landlord had received no payment for the period in question. Thus, the tenant is liable to the landlord in the sum of $10,639.38, the fee set by this Court's prior decision for use and occupation of the leased premises.

### II

■ The third branch of landlord's motion seeks the value of, or return of, property removed by the debtor before it vacated the leased premises on May 1, 1981. The landlord claims the property removed was realty; hence, its removal was wrongful, and the debtor's continuing possession of the property would constitute conversion.

Removal of the fixtures was also in violation of clause three of the 1974 lease between the parties, which states that "all fixtures ... installed in the premises at any time, either by tenant or by landlord in tenant's behalf, shall become the property of the landlord . . . ."

In contraposition, the debtor contends that the fixtures removed were personalty.

Mr. Darcy, an employee of the debtor, testified that he was under the impression that he was removing corporate property when he supervised and directed the removal of the fixtures.

Mr. Peirez, a general partner of the landlord, and one of the builders of the leased premises, testified that the buss ducts and electrical equipment removed by the debtor were part of a system of twelve electrical lines that formed a grid just below the ceiling, which provided electrical power for the building. Peirez further testified that he ascertained what was missing by inspecting adjacent lines, which were identical to the sections of the line which the debtor removed. Finally, Mr. Peirez stated that the network of buss ducts had originally been installed by the landlord, for the convenience of the tenants and to make the building more attractive to prospective industrial tenants.

Mr. Charlston testified that the debtor was the successor in interest to Viewlex Audio-Visual. If Viewlex had previously owned the electrical equipment and the

water fountains, as he believed it had, the debtor would now be the owner. No testimony was adduced establishing Viewlex's ownership of the fixtures in question.

■ In New York, the issue of whether fixtures are realty or personalty posits upon the following three-prong test:

(1) Is the article so annexed to the realty that its removal would materially damage the realty or the article, or both?

(2) If the article is removable, was it custom built or adaptable to the freehold such that removal of the article would reduce the value of the premises to a prospective tenant?

(3) Was the intention of the party making the annexation to make a permanent annexation to the freehold? *Gurwitz v. State*, 27 Misc.2d 731, 211 N.Y.S.2d 641 (Ct. of Claims, 1961), *aff'd.* 15 A.D.2d 712, 223 N.Y.S.2d 854 (3rd Dept. 1962).

In the more recent decisions, there is a trend to accord greater weight to the third factor, the intent behind the annexation, rather than to the first two factors, which govern the manner of annexation. *Marine Midland Trust Co. v. Ahern*, 16 N.Y.S.2d 656 (Sup. Broome Co. 1939); *Richards-Dowdle Inc. v. State*, 24 A.D.2d 824, 264 N.Y. S.2d 179 (4th Dept. 1965); *accord In re Lido Beach Sewerage Collection District*, 40 Misc.2d 384, 243 N.Y.S.2d 223 (Nassau Co. 1963).

After consideration of the objective facts concerning the landlord's intent, the Court concludes that the fixtures in question were realty rather than personalty. The landlord purchased the fixtures at an original cost of $300,000. They were installed by the landlord as an inducement to prospective tenants.

Thus, the Court finds that the landlord's substantial expense indicates an intention that the fixtures were to be permanent. The fact that the fixtures removed were part of a much larger system which remained in place suggests that the debtor merely took what was necessary to the continuation of its business at its new premises.

In light of the determination that the fixtures removed by the debtor from the leased premises in early April were realty rather than personalty, said fixtures must be returned to the leased premises and reinstalled by the debtor at its own expense.

### III

In the fourth prayer for relief, the landlord seeks a determination that the debtor's removal of the fixtures violated the temporary restraining order of this Court, dated April 24, 1981, thus warranting a finding that the debtor is in contempt of this Court.

■ To find a party in contempt, it must be determined that:

(1) A specific and definite order of the Court has been violated, and

(2) that the person had actual knowledge of the Court order. *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), *cert. den.* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re Mavromatis*, Case No. 880–02783 (E.D.N.Y. Mar. 20, 1981); *In re Abt*, 2 B.R. 323, 1 C.B.C.2d 374, 376 (Bkrtcy.E.D.Penn.1980).

■ Messrs. Charlston, Bruno, and Darcy all testified for the debtor that the fixtures in question were removed from the leased premises in early April and had been installed in the debtor's new premises by April 15.

Mr. Peirez, for the landlord, testified that he did not know whether any fixtures had been removed after the entry of the aforesaid order.

Thus, the landlord has failed to demonstrate even a *prima facie* showing that any of the fixtures were removed after the entry of the temporary restraining order on April 24, 1981.

Further, said order did not mandate the return of the fixtures. There can, therefore, be no violation of the Court's April 24 order due to the debtor's retention of the items after the order was issued, or in their removal *before* the signing of the temporary restraining order.

## IV

 Finally, the landlord seeks to have the debtor clean up the leased premises, or in the alternative, a money judgment in such sum as is necessary to have the debris and garbage left by the debtor removed from the demised premises.

Mr. Peirez testified that useless file cabinets and garbage remained on the premises after the debtor vacated them on May 1, 1981.

The debtor did not refute this characterization of the condition of the premises.

To support his motion, landlord points to two specific clauses in the lease which place the obligation on the debtor to surrender the premises in good condition on termination of the lease. Pursuant to clause twenty-one of said lease, the debtor contracted that "upon the expiration or other termination of this lease, tenant shall quit and surrender to landlord the demised premises, broom clean, in good order and condition . . . and tenant shall remove all its property."

Also instructive is clause thirty-eight of the lease, in which the debtor agrees that "upon the expiration or at termination of this lease, tenant shall remove all property of tenant as directed by landlord, and failing to do so, landlord may cause all of the said property to be removed at the expense of tenant and tenant hereby agrees to pay all costs and expenses thereby incurred . . . ."

Mindful that the bankruptcy court is essentially a court of equity, *see, e. g., SEC v. United States Realty Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940), the Court finds that the principles of equity mandate that the debtor restore the premises to a condition that complies with the aforesaid clauses of the lease. *In the Matter of Furniture-in-the-Raw*, 13 C.B.C. 284 (S.D.N.Y.1977) *aff'd.* 462 F.Supp. 958, (S.D.N.Y.) (Goetel, D. J.).

### CONCLUSION

In light of the foregoing discussion, the Court finds:

(1) That pending the report by the trustee, the landlord's application to have the Chapter 11 case converted to Chapter 7 is adjourned *sine die.*

(2) The debtor is directed to remit to the landlord the sum of $10,639.38 no later than ten days after this decision becomes final.

(3) The debtor is directed forthwith to return to the landlord all fixtures which were removed from the demised premises as set forth in landlord's motion, and is to bear the costs to the landlord of installing said fixtures in the demised premises.

(4) The landlord's request to hold the debtor in contempt is denied.

(5) The debtor is directed forthwith to restore, at its own expense, the demised premises to a condition that complies with paragraphs twenty-one and thirty-eight of the lease.

SETTLE ORDER.