In re NEW ENGLAND CARPET COMPANY, Debtor.

NEW ENGLAND CARPET COMPANY, Plaintiff,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant.

Bankruptcy No. 81–00138.
Adv. No. 81–0161.

United States Bankruptcy Court, D. Vermont.

March 10, 1982.

Charles T. Shea, and Norman Williams, of Gravel, Shea & Wright, Burlington, Vt., for plaintiff-debtor.

Spencer R. Knapp, and John D. Monahan, Jr., of Dinse, Allen & Erdmann, Burlington, Vt., for defendant.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The Debtor as plaintiff filed a Complaint in an adversary proceeding for declaratory judgment and injunctive relief with attorney's fees pursuant to Rule 701 of the Rules of Bankruptcy Procedure and § 365 of the Bankruptcy Code. Under this Complaint the Plaintiff seeks to enjoin the Defendant from terminating a contract for insurance coverage of the Debtor's employees with respect to life, accidental death and dismemberment, and major medical insurance.

The Plaintiff also filed a Motion for a Temporary Restraining Order which was entered and was to remain in effect until there had been a judicial determination of the Plaintiff's Petition for a Declaratory Judgment and permanent injunction.

The Defendant filed its Answer alleging that the Bankruptcy Court lacked jurisdiction to grant the relief and praying for vacation of the Temporary Restraining Order, a dismissal of the Complaint, and, in the alternative if the Court determines it has jurisdiction to enjoin the Defendant, then the Court should order the Debtor, pursuant to § 365(d)(2), to determine within ten days whether to assume or reject the insurance contract.

In lieu of an evidentiary hearing, the parties filed a written Stipulation, a copy of which is hereto attached.

Under § 365(a) of the Bankruptcy Code a trustee, subject to the Court's approval, may assume or reject any executory contract. A debtor in possession has the same rights as a trustee. § 1107 of the Bankruptcy Code.

The Defendant is resisting the relief sought by the Debtor on the grounds that the contract between the Debtor and the Defendant is not "executory." It admits that the Bankruptcy Code does not define an "executory contract" but argues that the term, "executory contract," takes on a more limited meaning in the light of the purposes for which the trustee is given the option to assume or reject. Citing *Jenson v. Financial Corp.*, 591 F.2d 477 (8th Cir. 1979).

The Defendant contends that there was no performance due from the Defendant, Connecticut General, under the contracts of insurance at the time of the filing of the Petition since all valid claims incurred during the policy had been covered in accordance with the terms of the contracts and that the only performance which remained was due from the Debtor, that being payment of premiums past due. Therefore, the Defendant reasons that the contracts may not be deemed "executory" and the Debtor-in-Possession is not in a position to assume or reject the insurance policies under § 365.

A more appropriate definition of an "executory contract," as pointed out by the Debtor, which is applicable in bankruptcy is that enunciated by Professor V. Countryman, an authority on bankruptcy, in his article entitled "Executory Contracts in Bankruptcy," Part 1, 57 Minn.L.Rev. 439 at 460 (1973). He stated that an executory contract is one "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." This definition was also adopted in the bankruptcy case of *In re Sun Ray Bakery, Inc.*, 5 B.R. 670 (Bkrtcy.).

■ Under the foregoing definition it appears that both parties, at the time of the filing of the Petition for Relief by the Debtor, were subject to an obligation of continuing performance under their respective contracts. Therefore, the obligations of the Debtor and of the Defendant were unperformed and the net result was an executory contract which, under § 365(a), the Debtor may assume or reject.

■ The Defendant further argues that even though the contract is "executory," it was terminated prior to the filing of the Debtor's Petition because of failure to pay the premiums. However, the Stipulated facts indicate that even after default the Defendant insurance company did continue to bill the Debtor and accept premium payments. By so doing, the Defendant recognized the continuing existence of the policies and is precluded from asserting forfeiture. *Pellon et al. v. Connecticut General Life Insurance Company*, 105 Vt. 508, 168 A. 701.

It has also been said that Bankruptcy Courts generally are not inclined to support forfeitures. 2 Collier 15th Edition, 365–29, citing *Finn v. Meighan*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624, 57 Am.B.R. (N.S.) 740, in which case Mr. Justice Douglas in discussing forfeiture clauses in leases said:

"The bankruptcy court does not look with favor upon forfeiture clauses in leases. They are liberally construed in favor of the bankrupt lessee so as not to deprive the estate of property which might turn out to be a valuable asset."

■ This Court is satisfied that the Debtor has the right to assume or reject the contract for insurance coverage with the Defendant. Although in straight liquidation cases under Chapter 7 there is a time limit of 60 days from the Order for Relief during which the trustee has the right to assume or reject, in a Chapter 11 for reorganization, such as the present case, there may be an assumption or rejection of an executory contract at any time before confirmation of the plan. The debtor is permitted a reasonable period of time. 2 Collier 15th Edition, 365–19,20. *In re H & S Manufacturing, Inc.*, 13 B.R. 692 (Bkrtcy.).

The relative test of "reasonableness" depends upon the facts and circumstances of the particular case. 2 Collier 15th Edition 365–20, *Matter of Chicago Rapid Transit Co.*, 50 Am.B.R. (N.S.) 152, 129 F.2d 1 (7th Cir. 1942). It has been held that under certain circumstances three months is a rea-

sonable period of time. *In re Flying W. Airways, Inc.*, 328 F.Supp. 1256 (E.D.Pa. 1971). In the instant case both the Debtor and a creditor have already filed Disclosure Statements and Plans for Reorganization. A hearing on the Disclosure Statements is being held within a comparatively short time after which, if a Disclosure Statement is approved, the acceptances may be solicited. It, therefore, appears that the confirmation hearing will be held within six weeks or two months. It is not unreasonable to permit the Debtor to decide whether to accept or reject the contract with the Defendant at the time of the confirmation hearing.

The Court recognizes that, in the event that the Debtor assumes the contract, it must meet certain conditions prescribed under § 365(b) of the Bankruptcy Code, such as curing defaults and providing adequate assurance for any pecuniary loss to the Defendant resulting from default. Since the Debtor has been current in payment of premiums since the date of the filing of the Petition it is only equitable that the contract with the Defendant be kept in existence until the hearing on confirmation. At that time there will be a determination as to the respective rights of the parties flowing from the assumption of the contract by the Debtor if in fact it does assume it.

Now, therefore, upon the foregoing,

IT IS ORDERED as follows:

1. The Temporary Restraining Order shall remain in full force and effect until the hearing on confirmation.

2. In the event that the Debtor decides to assume the executory contract with the Defendant the relative rights as to defaults and the curing thereof will be set for further hearing.

## STIPULATION

NOW COME the parties, by and through their attorneys, and hereby stipulate and agree as follows:

1. On November 1, 1978, the Plaintiff purchased from the Defendant group insurance policies (Group Insurance Account No. 0433091) providing coverage for the Plaintiff's employees with respect to life, accidental death and dismemberment, and major medical expenses.

2. The three contracts of insurance, attached hereto and submitted herewith as Exhibit A, are the contracts in issue (Group Insurance Account No. 0433091; Contracts No. 0433091–01, –02, and –03).

3. The *effective dates* of the aforesaid policies were November 1, 1978. The *dates of issue* were February 1, 1979. The *anniversary dates* were November 11.

4. Section 36 of each policy provides, in part, as follows:

> If any premium is not paid when due, this policy will automatically be discontinued as of the Premium Due Date, except as provided below.
>
> GRACE PERIOD: If, prior to any day on which premium is due, the Policyholder has not given written notice to the Insurance Company that this policy is to be discontinued, a grace period of 31 days will be granted for the payment of every premium after the initial premium, during which time this policy will be continued in force. If any premium is not paid before the expiration of the grace period, this policy will automatically be discontinued at the expiration of the grace period, except that if the Policyholder has given written notice in advance of an earlier date of discontinuance, this policy will be discontinued as of the earlier date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time this policy was in force.

5. On June 30, 1981, Plaintiff filed a petition for relief under Chapter 11 of the Bankruptcy Code. To date, no reorganization plan has been confirmed in this case.

6. Prior to the date the petition in bankruptcy was filed, Plaintiff failed to make payments of premium amounts due under its group insurance account on three occasions. Specifically, Plaintiff failed to pay $720.36 billed April 11, 1981; $1,027.64 billed May 11, 1981; and $1,000 billed June 11, 1981, resulting in a total amount due of

$2,748.00. (Defendant seeks only $2,692.72 in this action due to a credit of $55.28 subsequently granted to Plaintiff.) The amounts billed and the payments received by Defendant from Plaintiff are set out below:

| PREMIUMS DUE | | AMOUNTS PAID | |
|---|---|---|---|
| Billing Date | Amount Billed | Received as of | Amount |
| 11/11/80 | $ 986.26 | | |
| 12/11/80 | $ 915.38 | 1/81 | $986.26 (from 11/11/80) |
| 1/11/81 | $ 950.82 | | |
| 2/11/81 | $ 950.82 | | |
| | | 3/81 | $1,866.20 ($915.38 from 12/11/80; $950.82 from 1/11/81) |
| 3/11/81 | $1,366.34 | | |
| 4/11/81 | $ 720.36 (not paid) | | |
| | | 5/81 | $950.82 (from 2/11/81) |
| 5/11/81 | $1,027.64 (not paid) | | |
| 6/11/81 | $1,000.00 (not paid) | | |
| | | 7/81 | $972.36 (payment against $1,366.34 due 3/11/81 less disputed amount of $393.98) |
| 7/11/81 | $ 523.10 (reflects credit of $393.98 overcharged in 3/11/81) | | |
| 8/11/81 | $ 923.18 | | |
| | | 9/81 | $972.36 (payment for amount billed 7/11/81 without credit since credit reflected in amount paid 7/81) |
| 9/11/81 | $ 923.18 | | |
| | | 10/81 | $923.18 (from 8/11/81) |
| 10/11/81 | $ 923.18 | | |
| | | 11/81 | $923.18 (from 9/11/81) |
| 11/11/81 | $ 996.97 | 12/81 | $1,920.15 ($923.18 from 10/11/81; $996.97 from 11/11/81) |

7. Notwithstanding the terms of Section 36 of its policies, Defendant continued to bill and accept payment of insurance premiums and to provide insurance coverage for Plaintiff despite Plaintiff's defaults with respect to amounts billed April 11, 1981, May 11, 1981 and June 11, 1981.

8. By letter dated October 28, 1981, Defendant informed Plaintiff that because of premium payments in arrears, the policies of insurance would be discontinued as of the anniversary date, November 11, 1981. No payments for premium amounts in arrears were made, and the policies of insurance were discontinued as of November 11, 1981.

9. On November 25, 1981, Plaintiff filed its complaint in this matter, along with a Motion for Temporary Restraining Order, requesting that the Defendant be restrained from cancelling the subject insurance policies. A Temporary Restraining Order was issued on November 25, 1981, requiring the Defendant to provide insurance to Plaintiff on the same terms as previously until the time of judicial determination of the Plaintiff's petition for declaratory judgment and permanent injunction in this matter.

10. As a result of the Court's order, coverage under the policies has remained in force continuously from November 25, 1981 to the present. Pending the outcome of this matter, the Defendant has refrained from billing the Plaintiff during this period.