In the Matter of EASTHAMPTON SAND & GRAVEL CO., INC., Debtor.

Peter BISTRIAN, Plaintiff,

v.

EASTHAMPTON SAND & GRAVEL CO., INC., Defendant.

Bankruptcy Nos. 882–82102–17, 882–0589–17.

United States Bankruptcy Court, E.D. New York.

Dec. 2, 1982.

Esseks, Hefter, Cuddy & Angel, Riverhead, N.Y. by William Esseks, Riverhead, N.Y., for plaintiff.

Pinks, Feldman & Brooks, Melville, N.Y. by Bernard S. Feldman, and Steven G. Pinks, for debtor.

## DECISION

BORIS RADOYEVICH, Bankruptcy Judge.

By complaint filed September 2, 1982 the plaintiff creditor, Peter Bistrian, seeks to vacate the Bankruptcy Code's automatic stay to allow him to proceed, in State Court, to recover possession of certain premises leased to the debtor/defendant, East Hampton Sand and Gravel Company, Inc. In its answer filed September 20, 1982 the defendant denies the complaint's material allegations, and asserts as affirmative defenses its statutory right to cure and assume the involved lease, and the necessity of the premises to its reorganization. See 11 U.S.C. § 365(a) and § 362(d)(2) respectively. In addition to its request for dismissal pursuant to Fed.R.Civ.P. ¶ 12(b)(6), the defendant counterclaims in the sum of $14,520 for an alleged preferential transfer of property of the debtor, effectuated by the plaintiff. In its reply filed September 30, 1982 the plaintiff denies the counterclaim's material allegations and asserts, as an affirmative defense, the position that a counterclaim may not be maintained in an adversary proceeding brought under Section 362(d) of the Bankruptcy Reform Act. A trial was held on September 30, and October 5, 1982 at which time both sides submitted their proofs. Based upon the record of said hearing this Court makes the following:

## FINDINGS OF FACT

1. On October 5, 1979 the plaintiff, Peter Bistrian (hereinafter "the creditor" or "lessor") acting as an individual and as president of Bistrian Gravel Corp., and his son, Patrick Bistrian, acting as president of Bistrian Cement Corp., executed an agreement with Harvey L. Katz, acting as president of East Hampton Sand and Gravel Co. (hereinafter "the debtor"), whereby the creditor leased the premises located on Springs Fireplace Road, East Hampton, New York, and sold the concrete manufacturing business operating thereon, to the debtor.

2. The purchase price for the sale of the concrete manufacturing business was $2,100,000, payable $500,000 down, with the $1,600,000 balance evidenced by a promissory note (hereinafter "the note") which was to be paid in 72 monthly payments (exclusive of the months of February, March, and April) of $32,847.47. Plaintiff's Exhibit 1 (Subsection L). Tr. of September 30, 1982 at page 32–33. (Hereinafter Tr. at " ").

3. The term of the lease is recited to be for ten years until October 4, 1989. Plaintiff's Exhibit 1 (Subsection N).

4. The consideration for said lease was agreed to be $250,000, payable $2,083.33 monthly throughout the term of the lease. Plaintiff's Exhibit 1 (Subsection N).

5. Paragraph 59 of the lease provides:

CONDITIONAL LIMITATIONS. The following obligations, conditions, and promises made by the tenant in this lease and related documents shall be deemed 'conditional limitations,' the nonperformance or breach of which shall automatically, without notice, terminate, cancel and void this lease upon which happening the landlord shall be entitled to accelerated rent, plus direct and consequential damages incurred by and provable by him, to wit, (a) nonpayment of rent after ten (10) days written notice to the tenant, (b) bankruptcy, insolvency and/or assignment for the benefit of creditors by the tenant and/or guarantors as per paragraph FIFTY–SIXTH, supra, (c) nonpayment of the note executed by the tenant even date herewith in connection with the contract of sale.

6. Paragraph 62 of the lease provides:

ACCELERATION. Upon the tenant's failure to pay any installment of rent in excess of ten (10) days after notice as herein provided or upon the tenant's continued default of any condition herein contained, in excess of ten (10) days after notice as provided by paragraph SIXTH, supra, then payment of the total rent for the entire term of this lease shall be accelerated and immediately due in full without the giving of any further notice by the landlord.

7. Paragraph 66 of the lease provides:

DEFAULT. Any default by the tenant and/or the guarantors of the following agreements and documents simultaneously executed herein shall be deemed a default of this document: (a) material default on the lease, (b) material default on the contract, (c) any default on the note.

8. Paragraph 6 of the lease provides:

If after the commencement of the term, ... Tenant shall make default in fulfilling any of the covenants of this lease, other than the covenants for the payment of rent or "additional rent" or if the demised premises become vacant or deserted, the Landlord may give to the Tenant ten days' notice of intention to end the term of this lease, and thereupon at the expiration of said ten days' (if said condition which was the basis of said notice shall continue to exist) the term under this lease shall expire as fully and completely as if that day were the date herein definitely fixed for the expiration of the term and the Tenant will then quit and surrender the demised premises to the Landlord, but the Tenant shall remain liable as hereinafter provided.

9. Paragraph 55 of the lease provides:

ASSIGNMENT. The Tenant shall have the right to freely assign this lease subject to the following conditions: ... (b) any assignment shall include the tandem assignment of all the following documents simultaneously executed herewith to the same assignee: [1] contract, [2] lease, [3] non-compete agreements, [4] reciprical supply agreement, [5] note...

10. The debtor made the monthly lease payments of $2,083.33 through September of 1982. Tr. of October 5, 1982 at 11–12.

11. The debtor failed to make payments on the note after June of 1982. Tr. at 33–34. Tr. of October 5, 1982 at 21.

12. On August 13, 1982 the creditor, as prescribed in the lease, served a notice of default on the debtor for its failure to make the July and August payments on the note. *See* unmarked exhibit in Plaintiff's Complaint. Tr. at 33, 34. Tr. of October 5, 1982 at 21–22.

13. On August 19, 1982 the debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code, and is currently operating as a debtor-in-possession.

14. The debtor has failed to introduce any evidence in support of his counterclaim.

CONCLUSIONS OF LAW

1. Within the context of a Chapter 11 proceeding, the lessor of a non-terminated lease is preempted from seeking to dispossess the debtor/lessee until such time as the debtor/lessee is required to assume or reject the lease.

2. A debtor/lessee in a Chapter 11 proceeding is to be afforded a reasonable time period extending no later than the date of confirmation, to either assume or reject a lease.

3. In allowing a debtor to assume a lease the Bankruptcy Court has the equitable power to modify the lease and to sever nonrent related conditional limitations which frustrate federal bankruptcy policy.

4. In allowing a debtor to assume a lease, the Bankruptcy Court should not sever non-insolvency related conditional limitations which are clearly vested by the contracting parties as an essential part of their bargain.

5. The equities of this case necessitate the debtor's assumption or rejection of this case within two weeks after entry of this judgment.

6. The debtor's counterclaim is not supported by the record.

## MEMORANDUM

██ In resolving this litigation, the threshold issue to be addressed is whether the subject lease is assumable pursuant to 11 U.S.C. § 365.[1] This determination depends on whether the lease, according to its provisions and pursuant to New York law, had terminated prior to the debtor's bankruptcy filing.[2] See In re National Shoes Inc., 20 B.R. 51, 8 B.C.D. 1380 (Bkrtcy.S.D. N.Y.1982); In re La Paglia, 8 B.R. 937, 7

B.C.D. 333 (Bkrtcy.E.D.N.Y.1981). The record established that the debtor has kept current on the payments specifically classified as rent. It is admitted that the debtor has defaulted on the note. Paragraphs 59 and 66 of the lease makes payment on the note an express condition of the lease. Accordingly, the lease was in default when the debtor failed to make the July payment on the note.

██ Paragraphs 6 and 64 afford the debtor a 10 day opportunity to cure the aforementioned default after a notice of default is served upon the debtor. Failure to cure within this period results in termination of the lease. It is undisputed that said notice of default was dated August 13, 1982. The debtor filed his petition with this Court on August 19, 1982. Accordingly, the ten day period had yet to run, the lease had not terminated, and the debtor still had sufficient interest in the lease to reinstate it pursuant to § 365(a). Generally see; In re Triangle Laboratories Inc., 663 F.2d 463 (3rd Cir.1981); In re La Paglia, cite supra; In re Acorn Investments, 8 B.R. 506, 7 B.C.D. 135 (Bkrtcy.S.D.Cal.1981); In re Hospitality Assoc., Inc., 6 B.R. 778, 6 B.C.D. 1142 (Bkrtcy.D.Or.1980).

██ Having established the assumability of the lease this Court notes that the creditor is proceeding pursuant to 11 U.S.C. § 362(d)(2).[3] Procedurally, this is an im-

---

1. 11 U.S.C. § 365 provides:
   (a) Except as provided in section 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
   (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
   (A) cures, or provides adequate assurance that the trustee will promptly cure, such default; .
   (B) compensates, provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

   (C) provides adequate assurance of future performance under such contract or lease.

2. Though the facts surrounding this issue appear undisputed, this Court must address it as the parties neglected to plead or stipulate to the non-termination of the lease.

3. 11 U.S.C. § 362(d) provides:
   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—·
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
   (2) with respect to a stay of an act against property, if—
   (A) the debtor does not have an equity in such property; and

proper statutory vehicle for determining the rights of parties involved in a non-terminated leasing arrangement. *See In re Acorn Investments, cite supra.* Section 365(a) of the Bankruptcy Code as applied through § 1107,[4] affords the debtor the discretionary right to assume the lease. The decision on whether to assume is based upon business considerations and is only reviewable by this Court to verify its benefit to the estate and to see whether the debtor is capable of curing the default and providing assurance of future performance. Within a Chapter 11 reorganization, the debtor is to be afforded a reasonable time to make its assumption or rejection decision, subject to the limitation that it must be made before confirmation. *In re New England Carpet Co.,* 18 B.R. 514, 8 B.C.D. 1121 (Bkrtcy.D.Vt.1982); *In re H & S Mfg. Inc.,* 13 B.R. 692 (Bkrtcy.E.D.N.Y.1981); 11 U.S.C. § 365(d). Prior to the debtor's election, the exercise of creditors' rights under § 362(d) are preempted.

■ However, such a situation does not preclude this Court from granting the creditor relief. As the record reveals that the determinative issues are well framed, and as it would be in the interest of justice, this Court will ignore any procedural irregularity and will invoke its inherent equitable powers to deem the creditor's complaint a motion for rejection of an executory contract pursuant to 11 U.S.C. § 365(d) and Bankr.R. 11–53, and the debtor's answer a cross motion for declaratory judgment on the issues of curing default and providing adequate assurance of future performance of the lease conditions. *See Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *SEC v. U.S. Realty Improvement Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *In re Richardson,* 14 B.R. 755 (Bkrtcy.E.D.Pa.1981); *In re H & S Mfg.*

*Inc., cite supra; In re Parr,* 1 B.R. 453 (Bkrtcy.E.D.N.Y.1979).

This proceeding involves a determination as to whether the lease can be assumed independent of the note obligation. The debtor argues that the rent owed under the lease and payment on the note are separate obligations. It is admitted that both documents arose from the same general transaction,[5] and that they are conditionally dependent upon each other. However, the debtor asserts that the rehabilitative spirit of the Bankruptcy Code allows for the severance of the two obligations upon assumption of the lease. The debtor argues that lease termination conditions, which are unrelated to the payment of rent, frustrate federal bankruptcy policy by unnecessarily encumbering a valuable asset which plays an important role in the debtor's reorganization.

■ This argument is not convincing. While it is recognized that within the context of reorganization this Court has the equitable power to modify lease provisions if it would benefit the estate and not significantly prejudice the lessor, *In re Sapolin Paints Inc.,* 5 B.R. 412 (Bkrtcy.E.D.N.Y. 1980); *See also In re Huntington Ltd.,* 654 F.2d 578 (9th Cir.1981); *In re Fontainebleau Hotel,* 515 F.2d 913 (5th Cir.1975); *In re Queens Boulevard Wine & Liquor Co. v. Blum,* 503 F.2d 202 (2d Cir.1974); *Weaver v. Hutson,* 459 F.2d 741 (4th Cir.1972); *In re Fleetwood Motel Corp.,* 335 F.2d 857 (3rd Cir.1964); equity will not countenance the debtor's exercise of § 365 to relieve itself of conditions which are clearly vested by the contracting parties as an essential part of their bargain and which do not contravene overiding federal policy. *See In re Overmyer,* 12 B.R. 777 (Bkrtcy.S.D.N.Y.1981).

---

(B) such property is not necessary to an effective reorganization.

4.  11 U.S.C. § 1107 provides:
    (a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section

330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

5.  The transaction being the sale of the business.

The present case involves a substantive default, and invokes none of the federal policy considerations which arise in the ipso facto termination clauses of the cases cited by the debtor. After reviewing the applicable law, this Court can discern no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible. The equitable considerations are therefore limited to the intent of the contracting parties in conditioning the lease on payment of the note.

The lease is part and parcel of one unified transaction whereby the creditor sold its concrete manufacturing business to the debtor. The documents were executed simultaneously and are replete with language indicating that default on the note would be considered a default on the lease, and that they could only be assigned in tandem. It is clear that payment on the note was a principal element of the overall agreement, and that it was a major consideration in effectuating the lease of the premises.[6] Severance of the note from the lease would deny the creditor the benefit of his bargain and would result in an unjust windfall for the debtor. Balancing the equities of the situation, it is determined that any assumption and cure of the defaulted lease pursuant to 11 U.S.C. § 365 will require payment of the note as provided therein.

In the event of the debtor's rejection of this lease, its postpetition liability to the lessor would be limited to the reasonable value of its use and occupancy. *Philadelphia Co. v. Dipple*, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941); *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960); *In re H & S Mfg. Inc.*, cite supra. Such compensation is surely not the equivalent of the combined obligation of the lease and the note. Any delay by the debtor accompanying a rejection of the lease will increasingly inure to the detriment of the lessor. Accordingly, equity will not allow the debtor until confirmation to make the § 365(a) decision. As the debtor has already enjoyed the benefits of § 365 for over three months, this Court determines that allowing the debtor two weeks from the entry of judgment will afford a reasonable opportunity to make an informed assumption/rejection decision. The creditor is stayed from proceeding against the debtor or the involved premises until said date. Afterwhich, contingent upon the non-occurrence of an assumption of the lease, the stay is vacated.[7]

The debtor has not introduced any evidence in support of his counterclaim. The record does not indicate the settlement of this cause of action. Accordingly the counterclaim is dismissed.

Settle judgment in accordance herewith.

---

6. Apparently, it was the intent of the parties to structure the transaction so that the lease would act as security for payment on the note.

7. The Bankruptcy Code's automatic stay has already been lifted by operation of law pursuant to 11 U.S.C. § 362(e). The authority for the temporary stay imposed herein is derived from the injunctive powers granted this Court pursuant to 11 U.S.C. § 105.