**In re MERCHANTS PLAZA, INC., Debtor.**

**SOUTHSIDE LEASING COMPANY, Plaintiff,**

v.

**MERCHANTS PLAZA, INC., Defendant.**

**Bankruptcy No. 3–83–00505.**
**Adv. No. 3–83–0391.**

United States Bankruptcy Court, D. Tennessee.

Dec. 15, 1983.

Charles E. Rader, Knoxville, Tenn., for plaintiff.

Stophel, Caldwell & Heggie, P.C., David E. Fielder, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The question before the court concerns the curative action necessary as a condition to the assumption of a long-term lease by the debtor in possession, 11 U.S.C.A. § 365(b) (1979). The plaintiff lessor contends that the debtor in possession must pay a rental arrearage in full concomitantly with its assumption of the unexpired lease. In contradistinction, the debtor in possession asserts that a contractual agreement amending the lease entitles it to pay the arrearage in installments over the term of the lease. Also at issue is whether the plaintiff violated the provisions of the automatic stay, 11 U.S.C.A. § 362(a) (1979), by sending postpetition notices purporting to terminate the lease.

I

On March 22, 1982, plaintiff Southside Leasing Company agreed to lease certain unimproved real estate in Knox County, Tennessee, to the debtor's former shareholders (Joe Holdredge and his wife, Joyce Holdredge, William C. Martin and his wife, Violet Martin). The lease agreement was formally amended on August 27, 1982, to substitute the debtor as lessee, in accordance with the parties' original intent.[1] The leasehold, subject to a first mortgage on the date of the lease, has been improved through the debtor's construction of a motel.

---

1. Performance of the debtor's obligations as lessee has been guaranteed by the Holdredges and the Martins.

The lease between plaintiff and the debtor requires monthly payments beginning at $2,000.00 and gradually increasing throughout the thirty-five (35) year term.[2] However, in anticipation of substantial revenues during the 1982 World's Fair, the debtor[3] agreed to pay $15,000.00 monthly during the period between the opening date of its motel or June 15, 1982, whichever came first, and October 31, 1982. When the anticipated revenues were not realized a revised rental schedule was agreed upon. The revision is recited in the original lessees' letter proposal of August 19, 1982, which provides in relevant part:

    2. The rent will be brought current in accordance with the schedule dated July 29, 1982. . . . With respect to rentals amounting to $55,000 which will be in arrears under the terms of the Ground Lease as of January 1, 1983, assuming all payments are made under the Revised Rental Schedule, such sums would be paid by us by means of Five Hundred Dollars ($500) per month additional rent over and above the scheduled rent commencing January 1, 1983. Such unpaid balance will accrue interest at the rate of ten percent (10%) per annum.

    . . . .

    6. *This agreement shall be conditioned upon your ability to obtain a commitment for extension or refinancing of the first mortgage indebtedness* against the property held by First Tennessee Bank, Knoxville, Tennessee, *within thirty (30) days from the date hereof.* You agree to use your best efforts and due diligence in obtaining a commitment for extension or refinancing of said first mortgage. (Emphasis added.)

    7. *In the event you are unable to obtain such commitment* for extension or refinancing of the first mortgage, *this agree- [sic] shall be of no effect* and you shall have the right to exercise all remedies available under the Ground Lease for nonpayment of rent by giving us notice of your inability to obtain a commitment for extension or refinancing of the first mortgage and fifteen (15) days from the date of such notice to bring current all rentals which are in arrears at this time. (Emphasis added.)

Plaintiff assented to this proposal, as evidenced by the signature of Moss W. Yater, plaintiff's president.

Plaintiff was obligated to make a balloon payment in March 1983, against the First Tennessee Bank's first mortgage note. According to the testimony of Moss W. Yater, he began negotiating to obtain refinancing with the Bank prior to plaintiff's acceptance on August 19, 1982, of the revised rental schedule. Although no commitment for an extension or refinancing of the Bank's first mortgage debt was obtained within the prescribed thirty-day period, debtor tendered, and plaintiff accepted, payments pursuant to the revised rental schedule. Discussions pertaining to refinancing between Yater and James M. Bunker, a vice-president of the Bank, continued until March 1983.

On January 15, 1983, during the pendency of plaintiff's ongoing discussions with First Tennessee Bank, Guy E. Cleveland purchased the entire stock in the debtor from the Holdredges and the Martins. Cleveland purchased the stock with the understanding that the revised rental schedule represented the effective agreement between the plaintiff and the debtor.

On or about February 9, 1983, subsequent to Cleveland's purchase of the debtor's stock, Bunker initially informed Yater that the existence of several materialman's liens created a problem insofar as refinancing the Bank's mortgage note.[4] On March 11,

---

**2.** The lease includes an option in favor of the lessee permitting extension of the lease term for an additional twenty-five (25) years.

**3.** Actually, the original lessees agreed to make the premium rental payment. However, it is apparent by reference to the amended lease agreement, dated August 27, 1982, that the parties intended for the debtor to be the lessee.

**4.** Because the debtor was unable to obtain financing from a lending institution, the motel was constructed with proceeds from the shareholders and pursuant to credit agreements with suppliers. Materialman's liens totaling $139,-

1983, the Bank informed Yater that it would not refinance plaintiff's mortgage indebtedness unless plaintiff agreed to subordinate its interest in the property to an instrument securing a note of Holdredge and Martin held by the Bank. This condition was unacceptable to plaintiff. On March 14, 1983, plaintiff advised the debtor and the original lessees that it was unable to secure refinancing of its mortgage indebtedness to First Tennessee Bank. Plaintiff further advised that the total rental arrearage of $54,500.00 [5] must consequently be paid on or before March 29, 1983, to avoid default under the terms of the letter agreement of August 19, 1982.

A chapter 11 petition was filed by the debtor on March 29, 1983. Two days thereafter, plaintiff gave written notice of default to both the debtor in possession and the original lessees. Demanding payment in full of the $54,500.00 rent arrearage, plaintiff's notice recited that the lease would be cancelled if payment was not made prior to April 15, 1983. Payment of the arrearage was not forthcoming. Notice of cancellation of the lease was given to the debtor in possession and the original lessees on April 16, 1983.

█ Plaintiff filed its complaint requesting relief from the automatic stay, 11 U.S.C.A. § 362(a) (1979), on April 27, 1983. Modification of the stay to permit plaintiff to obtain possession of the leasehold and to pursue a judgment for damages is requested. Contending that 11 U.S.C.A. § 365 (1979) preempts Code § 362(a), the debtor argues that plaintiff's request for relief

from the stay is premature. *Matter of Easthampton Sand & Gravel Co., Inc.,* 25 B.R. 193 (Bkrtcy.E.D.N.Y.1982) (request for relief from automatic stay pursuant to Code § 362(d)(2) improper in determining rights of parties to a non-terminated lease). According to the debtor, as a debtor in possession, it has a right to assume the unexpired lease and the court should determine the necessary conditions precedent to assumption. The debtor further contends that plaintiff's postpetition notices to it violate the Code § 362(a) automatic stay and requests the court to find plaintiff in contempt. In accordance with the parties' request, plaintiff's complaint will be treated as a motion for an order establishing the time within which the lease in question must be either assumed or rejected, 11 U.S. C.A. § 365(d)(2) (1979).[6]

## II

█ With exceptions immaterial herein, "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (1979). Since a chapter 11 debtor in possession has the same rights as a trustee, with the exception of the right to compensation, 11 U.S.C.A. § 1107(a) (1979), the debtor in possession may request permission to assume debtor's lease with the plaintiff. Certain statutory conditions must be satisfied at the time of assumption if a default has occurred under an unexpired lease:

> If there has been a default in an ... unexpired lease of the debtor, the trustee

---

391.21 have allegedly been filed against the leased premises. Although plaintiff did not prove this allegation at trial, the debtor conceded that materialman's liens have been filed against the leasehold.

**5.** This figure is $500.00 less than the delinquency stated in paragraph 2 of the August 19, 1982, letter agreement. No explanation for this inconsistency has been offered.

**6.** This provision enacts:
   "In a case under Chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of

a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."
   Plaintiff should have requested the court to fix a time for the assumption or rejection of its lease with the debtor instead of seeking relief from the automatic stay of 11 U.S.C.A. § 362(a) (1979). *In re Attorneys Office Management, Inc.,* 29 B.R. 96, 10 Bankr.Ct.Dec. 1427 (Bkrtcy.C.D.Cal.1983); *Matter of Easthampton Sand & Gravel Co., Inc.,* 25 B.R. 193 (Bkrtcy.E.D.N.Y.1982).

may not assume such ... lease unless, at the time of assumption, ... the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such ... lease.

11 U.S.C.A. § 365(b)(1) (1979).

The principal controversy between the parties is whether the debtor in possession may pay the 1982 arrearage of $54,500.00 in deferred payments over the remaining term of the lease. Plaintiff contends that, under the plain language of the August 19, 1982, letter agreement, it is entitled to current payment in full of the $54,500.00 arrearage. Consequently, plaintiff insists that the debtor in possession must pay $54,500.00, plus interest, as a condition to assumption of the lease. The debtor advances three arguments to support its contention that it should be permitted to make deferred payments to liquidate the arrearage: (1) the plaintiff did not make best efforts to obtain refinancing of the First Tennessee Bank mortgage debt; (2) although plaintiff was not able to obtain refinancing the first mortgage indebtedness has been paid in full, and plaintiff thus does not need the delinquent rent proceeds; (3) plaintiff waived its rights under the letter agreement of August 19, 1982, by accepting payments as proposed under the revised rental schedule.

■ Yater testified that he met with more than thirty prospective lenders after a refinancing arrangement was not achieved with First Tennessee Bank. His unrefuted testimony demonstrates that plaintiff exercised best efforts and due diligence in an attempt to procure refinancing. Yater further testified that the Bank's mortgage note has been paid. The balloon payment was made with (i) loan proceeds obtained by mortgaging both his home and another piece of real property, and (ii) proceeds from the sale of stock belonging to him and other unidentified individuals. The payment of the mortgage note, however, is immaterial insofar as whether plaintiff is entitled to immediate or deferred payment of the arrearage. The satisfaction of plaintiff's mortgage indebtedness is not a condition of the agreement which would permit deferred installment payments of the arrearage. Paragraph 7 of the parties' August 19, 1982, letter agreement explicitly provides that the agreement permitting deferred payment of the arrearage is a nullity absent a commitment for refinancing the first mortgage debt. Plaintiff did not agree to accept deferred payments in the event that its own money or that of its principals was used to pay First Tennessee Bank, and this court is not at liberty to reform the parties' letter agreement.

The court also disagrees with the debtor's argument that plaintiff waived its right to demand current payment of the $54,500.00 arrearage. James Eason, vice-president of the debtor since December 1982, testified that, previous to Cleveland's stock purchase of January 15, 1983, Yater told him that the August 19, 1982, letter agreement represented the agreement in effect between the parties. Yater admits that plaintiff demanded payment of the $500.00 installment payment against the $54,500.00 arrearage during January 1983, and that additional installment payments against the delinquency have been tendered. However, when the January demand for payment in conformity with the revised rental schedule was made, the parties had no reason to suspect that a commitment for refinancing would not be obtained. Discussions between Yater and Bunker, the First Tennessee Bank official, had been ongoing for approximately five months without mention of any difficulty or obstacle to refinancing by the Bank. Forms for a corporate resolution authorizing refinancing were given to Yater by Bunker on more than one occasion. Indeed, Bunker testified that he had

no doubt that the Bank's mortgage note would be refinanced. Also, plaintiff notified the debtor's counsel by a letter dated February 14, 1983,[7] that acceptance of the January rental payment did not waive paragraphs 6 and 7, quoted *supra,* of the August 19, 1982, letter agreement. Furthermore, Eason conceded that he had a copy of the August 19, 1982, letter agreement and that he was aware of the refinancing proviso.

■ The parties' agreement to payment of the arrearage was expressly conditioned upon plaintiff's ability to obtain a refinancing commitment within thirty days from August 19, 1982. This condition was neither fulfilled within the prescribed period nor thereafter. The qualified offer by First Tennessee Bank requiring subordination of plaintiff's interest was not a "commitment" within the contemplation of the parties when plaintiff accepted debtor's proposal of August 19, 1982. Plaintiff is not estopped to demand current payment of the arrearage on the basis of inaction prior to its notice of March 14, 1983, demanding payment in full of the delinquent rent. There was no prejudicial delay by plaintiff in asserting its inability to procure refinancing because demand was made within three days of learning that First Tennessee Bank would not commit to refinance. Hence, under the express terms of the parties' agreement, plaintiff is entitled to current payment of the rent arrearage. Plaintiff, however, is not entitled to interest on the arrearage under either the original lease or the formal amendment. Also, interest is not allowable pursuant to the latter agreement of August 19, 1982, because that agreement is nullified.

### III

The question remains whether plaintiff's postpetition notices to the debtor violate 11 U.S.C.A. § 362 (Supp.1983) which provides in part:

(a) Except as provided in subsection (b) of this section, a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of—

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate;

. . . .

Plaintiff sent a postpetition notice of default and statement of intent to terminate to the debtor in possession on March 31, 1983.[8] This notice was followed by the April 16, 1983, notice of cancellation of the lease.[9] A further formal notice of default dated May 10, 1983, was also mailed to the debtor in possession.[10] Further, Yater concedes that additional postpetition notices pertaining to default were also mailed to the debtor in possession.

Plaintiff maintains that Code § 362(a) does not forbid giving notice and that a formal demand, absent a specific waiver by the lessee, is a prerequisite to termination of a lease for nonpayment under Tennessee law. *Arnold v. Lemond,* 192 Tenn. 366, 241 S.W.2d 430 (1951). Although federal law is preemptive in this case, the court notes that plaintiff satisfied Tennessee law by making a formal *prepetition* demand for payment in its letter of March 14, 1983. No postpetition notice was necessary to protect plaintiff's right under either the parties' agreement or applicable nonbankruptcy law.

■ The language of Code § 362(a)(3) is quite broad; its purpose is to prevent dismemberment of an estate. In discussing this provision, *Collier* states:

[C]ertain contracts that are property of the estate may be said to vest the debtor with property rights of a sort and their termination would have the effect of removing property from the proceeding in violation of section 362(a)(3). A common example would be a lease of real property. Clearly an attempted ouster of a lessee after commencement of the case

---

**7.** See Exh. 5.

**8.** See Exh. 7.

**9.** See Exh. 8.

**10.** See Exh. 9.

would be stayed under section 362(a)(3) .... What, however, of a valid clause, such as one which would permit termination for non-payment of rent? The better view is that such termination efforts should not be permitted either based upon the instant paragraph or upon paragraph (6) which is very broad and stays acts "to collect, assess or recover a claim against the debtor."

2 *Collier on Bankruptcy* ¶ 362.04[3] (15th ed. 1983).

The postpetition notices of cancellation and termination in this case constitute acts designed to obtain possession of property of the estate and are thus violative of Code § 362(a)(3).

In conclusion, the debtor in possession may assume the unexpired lease only if it can satisfy the requirements of Code § 365(b), including either the current payment of the total arrearage or adequate assurance that this arrearage will be promptly paid.[11] Also, the debtor in possession must either pay or provide adequate assurance of prompt payment of its pro-rata share of any real estate taxes due and owing or previously paid by plaintiff. A decision to either assume or reject the lease shall be made within fifteen (15) days from the filing of this Memorandum.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

11. Paragraph 15 of the original lease requires the lessee to indemnify the lessor against loss or expense resulting from improvement of the leasehold. The present record does not permit the court to make a finding pertaining to the validity of any materialman's lien claim against the leased premises.